## COOPER VS. GREEN et al.

Cooper sold lands to be paid for in *cotton*, by three installments, and took three separate *cotton* notes therefor, due respectively, 1st January, 1871, 1st January, 1872, 1st January, 1873; upon cond tion that if Green (the vendee) should fail to pay either one of the installments as they respectively fell due, the vendor reserved the right and authority to re-enter the premises after the expiration of twelve months from the time the vendee should fail to pay either one of the installments of cotton as specified; and in case of re-entry by the vendor, any payment that may have been made by the vendee should become forfeited; and the vendor, also, reserved a lien upon all cotton that might be raised on the premises for the term of four years, until the installments were respectively paid.

Cooper vs. Green et al.

Before either of the installments became due, Green conveyed to one Anderson, in trust for Foster, Kealhofer & Co., the said lands and the crop grown on a part of the place, to secure advances made and to be made. The lands were sold, under the deed of trust, January 21, 1871, and purchased by Foster, Kealhofer & Co. Cooper brought bill February 9, 1871, to enforce a vendor's lien, praying judgment for the *whole* of the cotton; that the same be declared a lien; that the lands be sold, and a receiver be appointed. On demurrer to bill, 1st. Because there was no cause of action at the time of the commencement of the suit; 2d. There was no breach of the condition of the deed; and, 3d. That the right of action to foreclose did not arise until 1st January, 1872: *Held*, That the trustee and the purchasers at the trust sale, took the lands charged with lien of Cooper for the purchase money; that Cooper had a lien upon the cotton crop produced upon the lands; that the trustee took the deed of trust upon the crop of 1870, subject to the vendor's lien. 2d. That the bill, as framed, did not make such a case of waste, as would warrant the appointment of a receiver to take possession of the lands. 3d. That the bill was prematurely brought for the relief prayed.

APPEAL from *Phillips* Circuit Court.
Hon. M. L. STEPHENSON, Circuit Judge.
*A. H. Garland*, for appellant.
*Palmer & Sanders*, for appellees.

ENGLISH, Sp. J. The bill in this case was filed on the chancery side of the circuit court of Phillips county, by Duncan B. Cooper, against John W. Greer and Foster, Kealhofer & Co., to enforce a vendor's lien, etc. The deed from Cooper, the vendor, which is the basis of the controversy, is in substance as follows: " This deed made and entered into, on the 16th day of February, 1870, by and between Duncan B. Cooper and wife, Florence, parties of the first part, and John W. Greer, party of the second part; all of the county of Phillips, etc., witnesseth, that for and in consideration of five hundred bales of lint cotton, weighing each four hundred pounds, to be

4

nicely handled and neatly put up, and all to be good merchant-
able cotton, of the classification of low middling, according
to the classification at Helena, Arkansas, the said cotton to be
delivered by said party of the second part to the said parties
of the first part as follows : one hundred and twenty-five bales
on the 1st of January, 1871; one hundred and twenty-five
bales on the 1st of January, 1873, and one hundred and
twenty-five bales on the 1st of January, 1874 ; the cotton to
be delivered on the 1st of January, 1871 and 1872, is to be
delivered on the premises hereafter described, and the balance
to be delivered in Helena, etc., to the parties of the first part
or their agent; the said parties of the first part have this day
bargained, granted, sold and conveyed, and by these presents
do grant, bargain, sell and convey unto the said party of the
second part, the following described lands, etc., situate in the
county of Phillips, etc. (here follows a description of the lands,
720 acres), to have and to hold, with all and singular the ap-
purtenances, etc., unto the said party of the second part, and
to his heirs and assigns in fee simple forever.  But this deed
is to be void on this condition, that is to say, if the said party
of the second part shall fail to pay to the said party of the
first part, either one of the installments above described as
they respectively fall due as aforesaid, in which event the said
parties of the first part hereby reserve to themselves the right,
power and authority to reenter upon the premises above de-
scribed after the expiration of twelve months from the time
that the said party of the second part may or shall fail to pay
either one of the installments of cotton as above specified, and
in case of reentry by the said parties of the first part, any pay-
ment that may have been made by the party of the second
part to the said parties of the first part, shall become forfeit;
and it is hereby expressly agreed between the parties to this
deed, that a lien is hereby reserved in favor of the parties of

the first part, on all the cotton that may be produced on the premises above described for the term of four years following the date hereof, until they are paid the installments respectively above stated, and to insure said lien, none of the cotton shall be removed from said premises, until the payments aforesaid shall be respectively paid."

The deed was signed by Cooper and wife, etc. The bill was filed on the 9th of February, 1871. It sets out the contract of sale, recites the provisions of the deed and makes it an exhibit. Avers that, at the time the deed was made, Greer executed to Cooper four cotton notes for one hundred and twenty-five bales each, according to the stipulations of the deed, the first payable the 1st of January, 1871, and the others annually thereafter. The notes were exhibited. The one first due is as follows:

"On or before the 1st day of January, 1871, I promise to pay to the order of Duncan B. Cooper, one hundred and twen. ty-five bales of lint cotton, of the class of low middling, according the Helena, Arkansas, classification; said bales to weigh not less than 400 pounds each, and be delivered on the plantation in this county (Phillips county, Arkansas), known as the Lucius Polk place, and the payment of this note is secured by deed of trust of this date, February 15, 1875." Signed by Greer. The other three notes were similar in form.

The bill further alleges that after the execution of the deed and notes, and on the 22d of April, 1870, Greer and one Standifer, by their deed of trust of that date, conveyed to one J. Monroe Anderson, as trustee for Foster, Kealhofer & Co., said lands, and the crops grown thereon, for the year 1870, and the crops grown on the Miller place, about 115 acres, to secure the payment of the sum of $300, then advanced, and any farther advances to be made by them. This trust deed is made an exhibit.

The bill further states, that plaintiff Cooper did not know and had no means of ascertaining what sums were advanced by Foster, Kealhofer & Co., to Greer and Standifer, but that Anderson, as such trustee took possession, and disposed of a part of said crops, but plaintiff did not know what sums were realized from the sale thereof. That the trustee, under and by virtue of the authority contained in said deed of trust, advertised the lands sold by Cooper to Greer for sale, and, on the 21st day of January, 1871, sold them at public auction to Foster, Kealhofer & Co., and that they were claiming possession of the lands, and were endeavoring to rent them for the year 1871. That plaintiff had received nothing for the lands so sold by him as aforesaid. That no part of the five hundred bales of cotton agreed to be paid and delivered to him by Greer, had been paid or delivered to him. " That the value of the 125 bales of cotton which were to have been delivered to him, on the 1st day of January, 1871, was the sum of $6,500, and the value of the 500 bales is the sum of $26,000, which is wholly unpaid, and which it is impossible for said defendant Greer to pay, since he has lost possession of said lands. That the plaintiff has a vendor's lien on said lands to secure the payment of said money so due as purchase money on said lands to said plaintiff. That said lands are not now of more than $21,000 in value, and, if exposed to sale, will not bring the sum due to plaintiff. That the defendant Greer is insolvent, and has no property subject to execution, and defendants, Foster, Kealhofer & Co., are nonresidents of the state of Arkansas. Therefore, plaintiff prays that he may have judgment for the value of said five hundred bales of cotton; that the same may be declared a lien on said lands, and said lands may be sold to satisfy and pay said judgment; that a receiver may be appointed to take charge of said property, and rent the same, and hold said

rents subject to the payment of the debt due to the plaintiff, or any balance that may remain after said lands are sold, and that plaintiff may have such other relief as the nature of the case may require."

On the 9th of February, 1871, the day on which the suit was commenced, the bill was presented to the circuit judge, at chambers, who appointed a receiver, and directed him to take charge of the lands, rent them out, and hold the rents subject to future orders of the court. At the May term, 1871, Foster, Kealhofer & Co., demurred to the bill, on the following grounds: 1. The complaint shows on its face that there was no present cause of action at the time of the institution of the suit. 2. There had not been a breach of the condition of the deed at the time of the institution of the suit. 3. The right of action to foreclose under the deed in this cause would not arise until the first day of January, 1872, and the suit was brought on the 9th of February, 1871.

The court sustained the demurrer on the first cause assigned, dissolved the *injunction*, as the record entry states, and directed the receiver to account to Foster, Kealhofer & Co., for the rents and profits of the lands for the year 1871, and the plaintiff declining to proceed further in the cause, the bill was dismissed. Cooper appealed to this court.

The question arising in this case may be considered in two aspects:

1. The deed from Cooper to Greer may be regarded as having vested in the latter an estate in the nature of a common law estate upon condition.

2. Cooper's lien upon the land, and upon the crops to be produced upon it, under the provisions of the deed, may be regarded as in the nature of a mortgage.

1. An estate upon condition may, in general terms, be defined to be one which may be created, enlarged or defeated by

the happening or not happening of some contingent event. A condition is a qualification or restriction annexed to a conveyance, and so united with it in the deed, as to qualify or restrain it. Conditions are precedent or subsequent.

Conditions precedent are, as the term implies, such as must happen before the estate dependent upon them can arise or be enlarged, while conditions subsequent are such as, when they do happen, defeat an estate already vested. Here, Greer took the estate in fee, subject to be defeated by his failure to perform a condition subsequent — in other words, by his failure to pay for the lands in the manner, and at the time stated in the deed. The deed was, by its terms, to be void on the condition that he failed to pay Cooper either one of the cotton installments specified in the deed, as they respectively fell due, and he was also to forfeit any payment he had made, on such failure. But the deed fixed and limited the time at which Cooper was to claim the benefit of the forfeiture, by reentering upon the lands, and that was after the expiration of twelve months from the time Greer might fail to pay either one of the cotton installments, and in case of reentry, any payment that had been made was to be forfeited. By the common law, the only mode of taking advantage of a breach of a condition which had the effect to defeat or work a forfeiture of an estate, was by an entry, upon the principle that it required as solemn an act to defeat as to create an estate. And when such entry had been made, the effect was to reduce the estate to the same plight, and to cause it to be held on the same terms, as if the estate to which the condition was annexed had not been granted. But the right to claim the forfeiture, on the failure to perform the condition, may be waived by him who has the right to assert it. 2 Washb. on Real Prop., p. 2 to 24. No doubt, under the provisions of the deed in question, Cooper had the right, on the common law principles,

after the expiration of twelve months from the time the first cotton installment fell due, Greer having failed to pay it, to claim the benefit of the forfeiture, and assert it by an entry upon the lands. And so he had the right to waive it, and resort to a bill to foreclose for so much of the purchase money as was due and unpaid, or to adopt any other appropriate legal remedy to secure his rights, for courts of equity do not favor such forfeitures, and will relieve against them upon a proper showing by the vendee that he has been unavoidably prevented from performing the condition. Id., p. 17 ; *Atkins' Adm'x v. Rison*, 25., Ark., 138. But in this case the first cotton note was not due until the 1st of January, 1871, and, at the time the bill was filed, 9th of February, 1871, Cooper had no right of entry, the time limited in the deed for him to claim the forfeiture, or to waive it, not having transpired.

2. We have above treated the estate taken by Greer, under the deed from Cooper, as if a technical common law estate upon condition. We will now treat the question as if Greer was a mortgagor and Cooper a mortgagee, under the provisions of the deed. On the face of the deed, it appears that the lands were sold by Cooper to Greer entirely upon credit, the price to be paid by four annual installments in cotton. Cooper had a lien upon the lands, and expressly, by a provision of the deed, upon the cotton crops to be produced upon them — their fruits — for the payment of the installments. This lien was in the nature of a mortgage. An estate created by a mortgage is not, technically, a common law estate upon condition, and yet the estate of the mortgagee is an estate upon condition, subject to be defeated by the performance of the condition by the mortgagor or his assigns. 1 Wash. on Real Prop., 19, 36. If the mortgagor, etc., pays the debt secured by the mortgage within the time limited, the estate is defeated. Id. If there had been no provision in the deed be-

fore us, except that the lands were to be paid for by install-
ments, Cooper could have filed his bill to foreclose on the
maturity of the first installment, and taken his decree for the
sale of so much of the lands as was necessary to pay the in-
stallments.  2 Hill on Mort., 189, etc.  Under what circum-
stances the court might extend the decree to a foreclosure for
the installments not matured, need not be stated in this case.
But, under the provisions of the deed, Greer was manifestly
entitled to the possession of all of the lands for twelve months
after his default to pay the first installment on its maturity.
Before the expiration of that time, after the default, Cooper
could not make an entry upon the lands; he could not dis-
possess Greer by ejectment, nor by a sale of any part of the
lands under a decree of foreclosure for the matured install-
ment.  He had placed this limitation upon his rights and
remedies in the deed.  The default to pay the first installment
occurred the first of January, 1871, the bill was filed on the
9th of February following, and prayed a foreclosure and sale
of the lands for all of the installments, when the time had
not expired, under the limitation contained in the deed, for
Greer to be dispossessed of the lands, or any portion of them,
by decree and sale even for the matured installment.  The
bill for decree and sale was therefore prematurely brought.
*Mooney v. Brinkley*, 17 Ark., 358-9.

3. But it is insisted by the counsel for the appellant that
the bill was well brought as a bill praying the appointment of
a receiver to take charge of the lands, and hold the rents and
profits, subject to the payment of the purchase money, on de-
cree of foreclosure, etc.  Where the mortgagor, or one hold-
ing under him, who is entitled to the possession of the lands
until default, as in this case, is committing or permitting waste,
the mortgagee may bring a bill for injunction to stay waste,
or have the property placed in the hands of a receiver, on a

sufficient showing.    Wash. on Real Prop., 2d vol., p. 149, sec. 28; *Mooney v. Brinkley, ub. sup.*   So the Code provides: "In an action by a mortgagee for the foreclosure of his mortgage and the sale of the mortgaged property, a receiver may in like manner (as in the preceding section) be appointed when it appears that the mortgaged property is in danger of being lost, removed or materially injured, or that the condition of the mortgage has not been performed, and that the property is probably insufficient to discharge the mortgaged debt." p. 106, ch. 5, sec. 324.

Now, what are the grounds alleged in the bill for the appointment of a receiver?

*First*, that Greer had, in April, 1870, made a deed of trust on the lands, and the crops grown thereon for that year; that the lands had been sold by the trustee and purchased by Foster, Kealhofer & Co., and that the trustee had also taken possession of and disposed of part of the crops.   There was nothing in the deed limiting the alienation of the lands.   The circumstance of an estate being subject to a condition does not affect its capacity of being aliened, devised or descending in the same manner as an indefeasible one, the purchaser, or whoever takes the estate by devise or descent, taking it subject to whatever condition is annexed to it.   2 Wash. on Real Prop., p. 19, sec. 24 and cases cited.   The trustee, therefore, and the purchasers at the trust sale, took the lands charged with the lien of Cooper for the purchase money.   Cooper had also a lien upon the cotton crops produced upon the lands. The trustee took the trust deed upon the crop of 1870, subject to Cooper's lien.   At the time the bill was filed he had, as the bill alleged, disposed of part of the crop.   He had taken no step, in the meantime, so far as the bill shows, to preserve and enforce his lien upon this cotton, nor did he ask, in the bill, any relief as to any portion of the crop of 1870

Cooper vs. Green et al.

that may have remained undisposed of. He merely asked that the lands be placed in charge of a receiver, to be rented out, and the rents held subject to the payment of his debt, etc.

*Second.* The bill also alleges that Foster, Kealhofer & Co. were claiming possession of the lands, etc., for 1870. Well, they had the right to the possession of the lands until the 1st of January, 1872, the time fixed in the deed for Cooper to claim the forfeiture and enter upon the lands; and they had the right to rent them out, subject to Cooper's lien upon any cotton that might be produced upon them. If the bill had gone further, and alleged that the lands would remain idle or be leased to persons who would not cultivate them in cotton, and that Cooper would thereby be deprived of one of the sources out of which, under the provisions of the deed, his debt was to be paid, and one upon which he doubtless relied in making the sale of the lands, there might have been some grounds for the court of equity to interpose and place the lands in the hands of a receiver to preserve the rents for his benefit, in connection with the other averments, that Greer was insolvent, that Foster, Kealhofer & Co. were nonresidents, and that the lands were not worth his debt.

We think the bill did not, as framed, make such a case of waste as would warrant the appointment of a receiver to take possession of the lands. That the bill was prematurely brought for the other relief prayed, we have stated above.

The decree of the court below must be affirmed.

STEPHENSON, J., being disqualified, did not sit in this case.