## SKIPWITH V. MARTIN.

1. COUNTIES: *Conveyance in trust for use of.*
   By an act of the territorial legislature, passed in 1821, before the incorporation of counties, commissioners were appointed to locate the county seat of Pulaski County, and provision was made for the appointment by the court of common pleas, of other commissioners to erect public buildings, who were authorized to receive donations for that purpose. Within 30 days after the passage of the act certain parties conveyed to the county and to the commissioners in trust, for the county, lots on which to erect a jail: *Held:* That the conveyance to the commissioners, was not invalid, and equity would not suffer it to be defeated by any lack of capacity or authority on their part, or on the part of the court of common pleas, to take and hold the title to the lots, in trust for the county.

2. SAME: Same: Condition subsequent in deed.
   A conveyance of town lots to commissioners, in trust for the use of a county, was, upon condition that the county should, within two years after the conveyance was made, build a jail upon the lots, and occupy them for that purpose "forever." *Held:* That this was a condition subsequent, which did not prevent the title to the lots from vesting, and its non-performance was a matter of interest only to the grantor— or his representative.

3. COVENANT: To make conveyance: Right to specific performance: Lapse of time.
   In the year 1821 a party claiming to own the land on which the city of Little Rock was located, but who had received no patent therefor, conveyed to Pulaski County, and to certain commissioners, in trust for that county, two lots in said city, to be used as a site for a county jail. In the year 1838 B, who also claimed the land, entered into a written agreement with the mayor and aldermen of the city, by which he covenanted that whenever the patent should be issued to him he would, upon reasonable demand, make a quit claim deed to any person who might hold lots in the city by conveyance from the original grantor. He obtained a patent in 1839, but failed to execute a conveyance to the county. The county jail was built upon the lots designated, within two years after the date of the deed to the county, and the property was used as a prison continuously until 1885, when it was sold by the county court to the plaintiff, who brought an action against the heirs of B for specific performance of his agreement and to quiet title. *Held:* That the county was within the letter of B's covenant; that the right to a deed was not lost by lapse of time, and should be enforced against B's heirs, by compelling them to execute a conveyance in accordance with his agreement.

4. EJECTMENT: Statute of limitations: Possession not adverse to third party:
   The statute of limitations may be made available against a plaintiff in ejectment, al-
   though the defendant's possession of the land sought to be recovered has not been
   adverse to a third party.
5. SAME: SAME: When patentee's right of action accrues: Title by adverse posses-
   sion.
   Where, on obtaining from the government a patent for land, the patentee finds a person
   in possession, claiming title by deed from a third party, he has an immediate right
   of action for posession, and if such action be not brought within the time limited by
   the statute the claim of the occupant ripens into an indefeasible estate.

APPEAL from *Pulaski* Chancery Court.

D. W. CARROLL, Chancellor.

*F. W. Compton, J. M. Moore and Geo. H. Sanders,* for appellants.

1. If Russell had had the legal title at the time of the execution of the Bill of Assurances the fee would not have passed to the county by virtue of it, but the effect would have been simply to convey an easement or perpetual servitude in the land for the uses and purposes therein defined. 3 *Wash. Real Property, p.* 333. The county at this date was incapable of being the grantee of a fee simple title. 26 *Ark.,* 37; 96 *U. S.,* 308; 4 *Ark.,* 473; 42 *Id.,* 54; 32 *Id.,* 575.

Review the acts of Congress and Territorial legislation and contend that there was no act authorizing a fee simple title to be made to a county until the act of March 20, 1839. See acts 1837. Hence the grant by Russell was intended as nothing more than a common law dedication of the lots to Pulaski county for the uses and purposes set out and defined in the bill of assurances. The whole instrument supports this construction. It was without consideration. It was made for the benefit of the public. It was limited and restricted to the uses and purposes specifically set out. It inhibited alienation in express terms. It was made to the court or commissioners in trust for the use of the county.

Now, a common law dedication leaves the fee in the grantor and conveys simply a use or servitude according to the limitations of the grant. *Dillon on Mun. Corps*, sec. 628, 633; *Washburn Easement and Serv.*, p. 216. A grant to the people of a county not incorporated is void. *Dillon Mun. Corp.*, sec. 560.

2. The possession of land under claim of an easement, or any interest less than the fee simple title, cannot ripen and mature into an absolute title under the statutes of limitation. The character of the holding is to be referred to the bill of assurances, or grant under which possession was taken. 62 *Wisc.*, 512; 27 *Id.*, 168; 29 *Id.*, 226; 47 *Ark.*, 320; 57 *N. H.*, 357; 39 *Wisc.*, 548. Possession is presumed to be in subserviency to the true title, until it is affirmatively shown to be otherwise. 42 *Ark.*, 118; 33 *Id.*, 633; 9 *N H.*, 254; 7 *Wheaton*, 59; *Angel on Lim.*, sec. 385; 24 *Ark.*, 390. See also on the doctrine of adverse possession. 9 *Johns.*, 180; 80 *Mo.*, 125; 68 *Ala.*, 55; 75 *Ala.*, 482; 52 *Iowa*, 366. Possession alone is not sufficient, it must be accompanied with a claim of a title *in fee*. 1 *Paine, C. C.* 457; *Tiederman on Real Property*, secs. 692–699; 9 *Wheat.*, 241; 9 *Johns.*, 180; 22 *Iowa*, 351; 59 *N. Y.*, 46; 16 *Cal.*, 636; 39 *Wisc.*, 538; 56 *N. H.*, 357; 38 *Conn.*, 562; 24 *Penn. St.*, 188; 37 *Miss.*, 138; 34 *Iowa*, 148; 12 *Iowa*, 101; 54 *Iowa*, 119; 47 *Ind.*, 30.

Beebe and his heirs, after procuring the legal title from the government by acquiescing in the possession of Pulaski county for the purposes indicated in the dedication, were estopped from setting up a claim inconsistent with the uses and purposes for which the lots were dedicated, but when the county vacated the property by a sale the estoppel no longer existed as to a stranger. *Wash. Easm. and Serv.*, p. 212; *Dillon on Mun. Corp.*, secs. 648–633; 18 *Oh. St.*, 221; 3 *Penn., St.*, 436; 66 *Ind.*, 580.

The possession and holding of the county could not have

been adverse to the government, and when the patent issued to Beebe, adverse possession and hostility must have been affirmatively shown, or the presumption of law is that it was by permission and not adverse. 29 *Wisc.*, 226. A condition once shown to exist will be presumed to continue until the contrary is shown. *Lawson on Presumptive Evidence, p.* 163; 39 *Hun.*, 262.

The statute did not begin to run until the sale to appellee. *Blackwood & Williams and Sam W. Williams,* for appellee.

By act of October 24, 1821, commissioners were appointed to locate the county seat, etc., with power to receive *donations*, and the bill of assurances gave and conveyed the lots to them in trust for Pulaski county. This disposes of the contention that Pulaski county could not receive a title until incorporated in 1839.

When the jail was built on the lots the condition was performed and the conditional title became absolute. Every purpose of the original proprietors has been performed. 16 *Gray (Mass.)*, 329; 26 *Ark.*, 628; 53 *Maine*, 212.

The word forever is synonymous with permanent. 5 *Iowa*, 1; 1 *La. Ann.*, 316; 18 *Ind.* 381.

The county took possession, claims and holds under the original proprietors, having no other title, and no one but the grantors or their heirs can enter for breach of conditions. 4 *Kent Com. Marg.*, 131. If a condition at all the building a jail was a condition subsequent; the bill of assurances carried the title in presenti and without reservation, except subsequent failure to build the jail, and this class of conditions are not favored, and are construed strictly against the grantor. *Ib. Marg., p.* 129, 130. If they become impossible by the law afterward the estate is not divested. *Ib.*, 36; 21 *Wallace,* 44. Breach of the condition does not forfeit the estate, there must be an entry by the grantor or heirs. *Tiedeman on Real Prop., Marg., p.* 277; 3 *Greenl.*

*Cruise, Marg., p.* 354. The right of entry cannot be conveyed. *Ib.* Neither the original proprietors nor Beebe could enter now, for condition broken, for the county has complied. 5 *Iowa,* 1; 1 *La. An.,* 316; 18 *Ind.,* 381. But the county has acquired title by limitation, which is as good as a deed. Sixty-six years of possession as a jail is a compliance with the condition. 89 *Ind..* 375; 7 *Wall.,* 290. An abandonment now would not work a forfeiture. *Ib. supra.*

The county was made a trustee for her citizens, and no one but the cestui que trust can complain of broken trust. 2 *Perry on Trusts, sec.* 816; *Tiedeman on R. P.,* 280; *sec.* 5 *Wall.,* 165; 2 *Washb., R. P.,* 2, 3; *Schier* 2 *Trinity,* 109 *Mass.;* 3 *Gray, Mass.,* 517.

The keeping of the jail in the heart of a great city had become a nuisance, so declared, hence it was illegal to keep it there; that rendered performance impossible and excused it. *Tiedeman on Real Prop., sec.* 274; 2 *Wash. Real Prop.,* 8.

2. Beebe's covenant bound him to make the county a quit-claim deed. Equity will compel his heirs to do so, if necessary. But after so great lapse of time equity will presume that a deed was executed according to his covenant.

3. Beebe and his heirs are barred, for their right of action accrued on issuance of the patent in 1839. *Mansf. Dig., sec.* 4471.

When possession is shown the burden is on Beebe's heirs, to avoid the statute by proof of a trust relation to him. The county has shown its non-existence. 48 *Ark.,* 278; 38 *Ib.,* 194, *Lawson on Pres. Ev., p.* 163; 60 *Cal.,* 414; 3 *Wash. R. P., p.* 93, *sec.* 27; see also 24 *Ark.,* 377.

Adverse possession for the statutory period is of itsef title, which may be used in ejectment. *Angel on Lim., sec.* 380 *and note;* 1 *Ib.,* 381–2–3–4. And when accompanied with an equity raises a presumption of a grant. *Ib.* 381, 384.

By receiving the title from the original proprietors we are not estopped to deny their title. *Bigelow Est.*, *p.* 289.

The right of entry of the original proprietor for breach of condition is not assignable even. It is a mere chose in action. *Tiedeman on R. P.*, *sec.* 277 *and note* 4; 21 *Wall.*, 346; 45 *Maine*, 359; 8 *Peck.*, 284; 102 *Mass.*, 302; 19 *N. Y.*, 103; 6 *N. Y.*, 506; 12 *Id.*, 132.

Equity releives against penalties and forfeitures, and never enforces them. *Story's Eq. Jur.*, 1315, 1319.

McCain, Special Judge. This is a controversy about the parcel of land occupied by the old county jail in Little Rock. The following statement of facts will serve to present the legal questions we are called upon to determine:

On the 24th day of October, 1821, the territorial legislature, by an act appointed three commissioners to locate the county seat of Pulaski county, and empowered the court of common pleas to appoint commissioners to superintend the erection of county buildings, and authorized the latter to receive donations for that purpose. Within less than thirty days from the passage of this act, one William Russell and certain of his associates, who claimed to be the proprietors of the soil, laid out and located the town which afterwards became the city of Little Rock. In addition to filing a plat of the town, Russell and his associates executed and acknowledged what they denominated a " Bill of Assurances," which was duly recorded. The bill of assurances contains this language:

" The owners and proprietors of said town of Little Rock hereby, give, grant and convey to the territory of Arkansas, and to the legislatures from time to time of said territory, and in trust for said territory, the open square of land represented on said plat by the words " territorial public square," which the proprietors as aforesaid hereby give, grant and

Skipwith v. Martin.

convey to the said territory of Arkansas forever, and to the legislature thereof for the use and in trust for said territory, for the consideration and upon the express condition and for the express use and purpose, and no other, that the seat of government of said territory and future state continues to be and remain upon said public square of land forever. And the said owners and proprietors in like manner, hereby give, grant and convey to the county of Pulaski, and in trust for said county to the commissioners or court that are, or may be authorized by law to locate the permanent seat of justice of said county, and contract for, erect and superintend the public buildings in and for said county, one-half square of land in said town, described * * * * * * And also give, grant and convey to said county, and to the commissioners or court aforesaid in trust for said county, lots 3 and 4 in block 103 in said town, which said two lots and half block of land in said town the said proprietors give, grant and convey to the commissioners or court aforesaid in trust for said county forever, for the following express conditions, uses and purposes, and for no other consideration, use or purpose, to wit: That the said county of Pulaski, within ten years from this date, erect a court house on said half block of land, and within two years after this date erect and build the common jail of said county upon the aforesaid lots 3 and 4; and that the same be continued, occupied and kept in repair for those purposes forever."

The county seat was located at Little Rock and the county jail was built upon the designated lots within two years, and from thence until 1885 the property was continuously used as a county prison.

Russell and his associates, whom we may for convenience designate the original proprietors, had never, it seems, procured from the goverment a patent for the land which they had thus laid out as a town site. Their right to such patent

was challenged by·rival claimants, among whom finally ap-..·
peared Roswell Beebe. Litigation sprang up among these·
claimants and the patent was withheld for many years.
Finally, in the year 1838, by way of adjusting the litigation
no doubt, yet for no other expressed consideration than one·
dollar, Roswell Beebe entered into a covenant in writing·
with the mayor and aldermen of Little Rock, by which he·
agreed and covenanted that whenever the United States gov-
ernment should issue to him a patent for the land consti-
tuting the disputed town site, he would upon reasonable·
demand, make a quit claim deed to any and every person
who might hold a conveyance from the original proprietors,.
for any lot or lots in said city ·of Little Rock. The patent
was awarded and delivered to Beebe in December, 1839·
The county records do not disclose that he ever made any
deed to Pulaski county. The growth of the city having ren-
dered it incompatible with the public welfare to longer use·
the property in controversy as a prison, the same was sold by
the county court in 1885 to Catharina Skipwith.

She has brought this action for specific performance and·
to quiet her title against the heirs and privies of Roswell
Beebe, deceased, and they have filed a counter claim setting
up the legal title to the property and demanding ·possession.

Taking up the points somewhat in their chronological
order, we first consider the question propounded by counsel
for appellants as to whether any title or estate passed by the·
bill of assurances so far as the lots in controversy are con-
cerned, assuming the proprietors to have had the legal title,

1. COUN-
TIES:
Convey-
ance in
trust for
use of.
Counties were first incorporated, it seems, by the act of·
1837. It is argued that a conveyance to a county, as such,.
before the act of 1837, was invalid for want of legal capacity
in the grantee to take and hold the title to real estate. This.
point would merit greater attention, but for the act of Octo-
ber 24, 1821. By that act commissioners were appointed to·

Skipwith v. Martin.

locate the county seat, and we can see no objection to a conveyance to these commissioners, in trust for the county. It is true that that this act contemplates two sets of commissioners, one to locate the county seat and another to superintend the erection of public buildings. The latter was to be appointed by the court of common pleas, and these last were expressly authorized to receive donations to aid in the erection of buildings.

The bill of assurances was drawn, no doubt, with special reference to this act. The grant was made to both sets of commissioners. It is not claimed that the county could not be the beneficiary of a conveyance in trust, and no objection is suggested to the commissioners taking the title in trust for the county. If there was any want of authority or lack of capacity on the part of the commissioners, or of the court of common pleas, or any of them, to take and hold the title, the conveyance would not thereby be defeated. Counsel for appellants say, in their brief: "It (the grant) was made to the court or commissioners in trust for the use of the county." Now, "it is a rule that admits of no exception that equity never wants a trustee, or in other words, that if a trust is once properly created, the incompetency, disability, death or non-appointment of a trustee shall not defeat it." *Perry on Trusts*, sec. 38; *Conway ex parte.* 4 *Ark.* 361.

It is also suggested that the language of the bill of assurances does not show that a conveyance of the title to the jail lots was intended. We think the words used are apt for that purpose according to even the most technical rules of conveyancing.

It is true that the conveyance was upon the condition that the county should build a jail upon the premises, but it is not denied that this condition was performed. 2. SAME: *Same.* Condition subsequent in deed.

Whether the permanent maintenance of the jail at this point was also a condition is not so clear. Two cases quite

Skipwith v. Martin.

analogous have been cited. The affirmative was held in *R. R. v. Hood*, 66 *Ind.*, 580, but in *Mead v. Ballard*, 7 *Wall.*, 290, such a provision was held to be nothing more than a covenant. We are not called upon, however, to determine this point in the present case. If this is a condition at all it must be agreed that it is a condition subsequent. Such a condition does not prevent the vesting of the title, The question of performance or non-performance of a condition subsequent could interest no one but the grantors, whom the appellants in this case do not pretend to represent. *Schulen-berg v. Harriman*, 21 *Wall.*, 63; 4 *Kent's Com.* 131. Coming down to the year 1839, our next inquiry is, whether Beebe, when he obtained his patent, was bound to make a deed to Pulaski county for the lots in controversy. This must be determined exclusively by his covenant. Since we have determined that the county had a good conveyance from the original proprietors, the county seems to have been within the letter of Beebe's covenant. If he had refused to make the deed on demand he would have been compelled to execute it on a bill for specific performance. If he would have been compelled to make it then, it is difficult to see why his heirs should not be required to make it now. It will hardly be claimed that the right has been lost by the lapse of time. We have never understood that a vendee in possession, who was entitled to a deed, could ever lose his right to a deed by efflux of time.

If Beebe was bound to make a deed, what kind of a deed was he to make? In view of the emphasis and reiteration in his covenant on this point, it would be unpardonable to raise a dispute as to the character of this deed. It was to be a quit-claim deed.

There can be as little controversy as to the effect of such a deed. Since he himself had obtained from the government, by his patent, a perfect title, as all concede, his quit-

*[margin note: 3. COVE-NANT: To make conveyance: Right to specific performance: Lapse of time.]*

claim deed then, and that of his heirs and privies, now would pass an indefeasible title.

It is suggested that the quit-claim deed which Beebe was to make should have had in it the same condition subsequent, touching the permanence of the jail, which was in the conveyance made by the original proprietors; but it is not so nominated in the bond. We can find nothing whatever to rest this proposition upon. We would not be ready to imply such a condition, as conditions of this kind are not favored by the courts, but, if we were, we can see nothing in the covenant to justify such an implication.

We have not overlooked the stipulation that the county was to demand the deed within a reasonable time. But, as a rule, equity does not regard time as of the essence of a contract, and especially if nothing more is required than a quit-claim deed, and the only excuse for not making it is a lack of demand. *Bispham's Equity*, sec. 391.

The only doubt we entertain on this point is whether a deed from Beebe was ever necessary. If we have properly construed Beebe's covenant the county became the equitable owner as soon as he obtained the legal title.

The sole object of the statute of uses was to divest the title of the legal owner and to pass it by operation of law to the equitable owner. The authorities seem to be agreed that covenants to stand seized and deeds of bargain and sale are within the purview of this statute. *Perry on Trusts*, secs. 162, 302; *Malone on Real Property Trials*, secs. 175, 179. The covenant of Beebe is pretty clearly within the common law definition of a deed of bargain and sale. 2 *Sanders on Uses and Trusts*, 53. We do not undertake to lay down the law on this point, however, as counsel on neither side have argued it. It is easy to see that this point, if well taken, would be equally fatal to the plaintiff's right of action,

and to the defendants' title, and it was wise enough, perhaps, on the part of both to ignore it. There are, of course, recognized exceptions to the statute of uses, established either from necessity or out of hostility on the part of the chancery courts, and this case may have been regarded by counsel as within the line of exceptions. *Perry on Trusts*, secs. 300 *et seq.*

These conclusions are sufficient to dispose of the case. But if we are mistaken in our legal deductions; if this property was not within the meaning and intent of Beebe's covenant; if this obligation to make a quit-claim deed was not intended for the benefit of Pulaski county, then we leave the parties without any contractual relations whatever. Their rights in such case must rest upon the statute of limitations. Pulaski county was a corporation, and was in possession of the jail property when Beebe obtained his patent, in December, 1839. Did Beebe have a right of action against the county for possession immediately upon the receipt of his patent? The contention is that he had not, the rule being that in the absence of any testimony to the contrary, the occupant must be presumed to hold in amity with and by sufferance of the holder of the legal title. This is undoubtedly the rule, but this presumption of amity may always be overcome by notorious demonstrations of hostility. This hostility may be shown by oral declarations, but the most satisfactory and conclusive evidence of disloyalty on the part of the occupant is for him to be found holding under a deed which upon its face shows treason to the lord of the fee. *Pillow v. Roberts*, 13 *How.*, 472. The deed may be void upon its face, and yet it may be used to show the hostile character of the possession claimed under it. In the present case the county had entered and was holding possession under a deed, and, whether that deed was good or bad, it was sufficient to show the quo animo of the occupancy, and in the

Skipwith v. Martin.

absence of any covenant between the parties gave Beebe an immediate right of action for possession. To escape the statute bar, the burden is now on Beebe's heirs to show an attornment or other evidence of subservient occupation. No such evidence has been adduced.

This case is easily distinguishable from the case of *Pulaski County v. The State*, 42 *Ark.*, 118. In that case the county held under no written instrument, and there was nothing whatever to rebut the presumption of amity in the possession.

It is urged that a defendant claiming by possession as against the plaintiff in ejectment, must not only show that he has held adversely to the plaintiff during the period of limitation, but that he must go further and show a possession " exclusive of the title of any other person." The statement of this proposition arouses our skepticism at once, and when we look into the numerous authorities cited to support it, we are not surprised to find that the cases do not justify the argument on this point. It is most broadly asserted in *R. R. v. Jones*, 68 *Ala.*, 48, but the proper qualification is made in the later case of *Dothard v. Duncan*, 75 *Ala.*, 482. So, if it were conceded, as appellants contend, that the possession of the county was not adverse to the original proprietors, it would not follow that the appellee could not claim the statute bar as against Beebe and his heirs.

The appellants, in demanding possession by their counter-claim, assume a position analogous to that of a plaintiff in ejectment. They must recover on the strength of their own title, and not upon the weakness of their adversary's.

This court, in *Wilson v. Spring*, 38 *Ark.*, 181, held it to be "well settled in this state that the statute is not merely defensive, but confers title which may be asserted in ejectment." If appellee, as the plaintiff in an action of eject-

4. EJECT-MENT: Statute of limitations: Possession not adverse to third party.

Skipwith v. Martin.

ment, was asserting a title acquired by adverse posseesion, the argument of appellant's counsel might well apply. It must not be forgotten, however, that oftentimes a title is all sufficient as a shield which might be entirely ineffective as a sword.

The same disposition may be made of the argument that the occupant must claim to be the owner in fee, before he can make the statute of limitations available. *Ricard v. Williams*, 7 *Wheaton*, 59, is cited as conclusive on this point. That is a leading case in the laws of real property, but we cannot see its application to the issues in this action. It is well settled, of course, that the plaintiff in ejectment makes a prime facie case when he deraigns title from one who, at some time in the past, was in posession, *claiming to be the owner in fee*, but in the case cited the plaintiff sought to rest his title simply upon the long-continued possession of the person under whom he claimed. Mr. Justice Story held that length of possession in that case was not a material circumstance, but that the essential fact to raise the presumption of ownership was the claim of title in fee on the part of the occupant. The proof having shown that the occupant claimed only a life estate, he could not, of course, be a source of title to one claiming under him after his death.

If, however, we have properly construed the instrument under which the county held, then she was claiming in fee and adversely to all other persons, as well as to Beebe and his heirs.

**5. SAME:** *Same.* **When patentee's right of action accrues: Title by adverse possession.** Without disputing the general proposition that the court may look to the deed under which the occupant holds to determine whether he is holding adversely, counsel for appellants urge as an exception to this general rule cases where the occupant setting up adverse possession was holding under his deed at the time the patent was issued by the govern-

ment to the rightful claimant of the legal title. We are not referred to any decision supporting this contention, and we think it would not be difficult to show the fallacy of the reasoning upon which it is based. If a person procures a patent for land from the government, and he finds some one already in possession, claiming the title by deed from a third person, the patentee has an immediate right of action for possession; and if the action be not brought within the period fixed by the statute, the claim of the occupant thereby ripens into an indefeasible estate. *Trapnall v. Burton*, 24 *Ark.*, 395.

This case might also be rested upon the presumption of a grant after a sufficient lapse of time, if that doctrine can be distinguished from right of title by limitation. The recent case of *Fletcher v. Fuller*, 120 *U. S.*, 534, is an instructing one on this point. The court in that case held that the execution of a deed necessary to complete the chain of title ought to be presumed in favor of the occupant after a great lapse of time, notwithstanding there was no evidence whatever that any such deed had ever in fact been executed.

Let the decree of the Pulaski Chancery Court be affirmed.

COCKRILL, C. J., did not sit in this case.