GOODWIN *v.* TYSON.

Opinion delivered January 26, 1925.

1. CONTRACTS—MUTUALITY.—A deed given on condition that the grantee support the grantor and family was not void for want of mutuality because the agreement to support was not signed by the grantee, since acceptance of the deed was an assent to that condition.

2. DEEDS—CONDITION SUBSEQUENT.—A condition in a deed that the grantee support the grantor and his family is not a condition precedent, but title passes upon execution and delivery of the deed, subject to be defeated upon failure of the grantee to perform the condition imposed.

3. DEEDS—CONDITION SUBSEQUENT.—Evidence *held* to show that grantee had complied with the condition that he support the grantee and his widow and minor daughters.

Appeal from Ouachita Chancery Court, Second Division; *George M. LeCroy,* Chancellor; reversed.

This suit was brought by the widow and three children of Hardy Goodwin on December 21, 1922, to cancel a deed executed by Hardy Goodwin on January 25, 1881, to his only son, Julius C. Goodwin. Retter A Goodwin, the wife of Hardy Goodwin joined her husband in the execution of this deed. At that time Hardy Goodwin was in poor health, and his son Julius was in charge of the land conveyed him, which was the homestead of Hardy Goodwin, who lived only a little more than two months after the execution of the deed, and died April 11, 1881.

The deed is a warranty deed in form, and, after the usual covenant of warranty, the following recitals appear: ''It is the true intent and meaning of these presents that, if the said Julius C. Goodwin shall covenant, promise, grant and agree to and with the said Hardy C. Goodwin in manner and form following, that is to say that he, the said Julius C. Goodwin, shall and will find and provide support, and maintain the said Hardy Goodwin and Retter A. Goodwin during the term of their natural lives, also Laura A. Goodwin, Julia C. Goodwin and Lillie T. Goodwin, during the term of their minority, or until they are otherwise provided for, and provided that, if the said Julius C. Goodwin, his heirs, executors and administrators, shall neglect or refuse to find, provide, support and maintain the said Hardy Goodwin, Retter A. Goodwin, Laura A. Goodwin, Julia C. Goodwin and Lilly T. Goodwin, that then, in all, any or either of the cases aforesaid, it shall and may be lawful to and for the said Hardy Goodwin all and singular the premises hereby granted to take, repossess and enjoy, as in his former estate.''

In addition to the daughters named in the deed, Hardy Goodwin had another daughter, but she was married at the time, and was not living with her father.

The three daughters mentioned in the deed were all minors at that time, Lillie, the youngest, being then only about seven years old.

The undisputed testimony shows that, after the death of Hardy Goodwin, his son Julius took complete charge of the property, and thereafter all taxes were paid in his own name. Julius was unmarried at the time of his father's death, but he married on December 18, 1881, and brought his wife to the family home to live. Some time later Julius built a new home, which the testimony shows, was largely paid for with money which his wife had received from the estate of her father. Mrs. Hardy Goodwin, the grantor's widow, and her three daughters, all lived in the family home, until December, 1891, when Laura married and moved away. Julia was then next to marry, and she, too, moved away after her marriage. Thereafter Mrs. Hardy Goodwin and the youngest daughter, Lillie, lived with Julius until March, 1892, when Lillie married and moved away, and her mother went with her. In August of that year Julius died.

After the death of Julius his widow had homestead and dower assigned her in these lands, and later Mrs. Julius Goodwin and her children moved away, but they have since continuously claimed to be the owner of the land, and have kept up the improvements and have paid the taxes and collected the rents, which, the testimony shows, have been but little more than enough to pay the taxes since 1900.

The lands were shown to have been worth about $2,000 at the time they were conveyed to Julius Goodwin, but they sufficed to make a living for him and his growing family and his mother and three sisters while they lived with him. The undisputed testimony shows that the three daughters contributed to their own support by their labor, and that they assisted in all the work that was done about the farm, and that they worked in the field and assisted in making the crops. But the testimony also shows that this was customary for

persons in similar circumstances, and that the girls and their mother were as well provided for as were their neighbors of similar means.

Mrs. Hardy Goodwin joined in this suit, with two of her daughters and the heirs of a third daughter, to cancel the deed to Julius Goodwin, but Mrs. Hardy Goodwin died soon after the institution of the suit, and it was revived in the names of her heirs, the other plaintiffs. The court granted the relief prayed, and canceled the deed, and directed that partition of the land be made among the heirs of Hardy Goodwin, and this appeal is from that decree. Other facts will be stated in the opinion.

*Kirby & Hays,* for appellant.

There was mutuality of contract, the grantor having accepted the grant, and he was therefore bound by it. An agreement to support one during his lifetime is a sufficient consideration. 110 Ark. 425; 86 Ark. 169; 97 Ark. 13; Ann. Cas. 1915 C. 385; 86 Ark. 252, 8 R. C. L. 927; note 3 L. R. A. 836. Title in fee was conveyed, providing for a forfeiture of the estate granted upon the failure to comply with the terms named, and constituted a condition subsequent. 50 Ark. 141; 28 Ark. 48; 98 Ark. 328; 133 Ark. 406; 143 Ark. 208; 91 Ark. 407; 8 R. C. L. 1100, 1104. Sec. 163. A breach of the conditions does not defeat the estate, which can only be done by some sufficient act of the grantor. 50 Ark. 141; 91 Ark. 407; 13 Cyc. 706, 711; 4 Kent's Comm. 127; Tiedeman on Real Property 277; 97 U. S. 693, 24 L. Ed. 1101. A court of equity will never lend its aid to divest an estate for breach of a condition subsequent. 4 Kent's Comm. 130; 13 Cyc. 709. The grantor's remedy upon breach of the contract is to sue at law for the amount of the consideration as it would become due, or else to treat the contract as void and sue in equity to cancel and set it aside. 103 Ark. 464; 67 Ark. 526; 86 Ark. 251. See also 134 Ark. 80. The right of entry is not an estate, not even a possibility of reverter; it is simply a chose in action. Tiedeman on Real Propesty, § 277. The condition was fully performed. 67

Ark. 526. The action of the widow and heirs in not calling for an accounting of rents and profits or requesting any support must be treated as a waiver. 98 Ark. 328; 143 Ark. 208; 13 Cyc. 708f; 77 Ark. 168; Tiedeman on Real Property 277. Any rights appellees would have had are barred by the statute of limitations C. & M. Dig. § 6942. Coverture does not exempt from the statute of limitations. 145 Ark. 536: *Hoggard* v. *Mitchell,* 164 Ark. 296.

*Thos. W. Hardy,* for appellee.

The grantee was obligated to support the survivors after the death of the grantor. 138 Ga. 407; 18 C. J. 371. Such support must be furnished at any place selected if it can be done without needless expense. 12 Allen (Mass.) 586; 18 C. J. 371. Reasonably good board with kindly treatment is contemplated, else it constitutes a breach of covenant. 51 Tex. Cir. App. 346. An estate on condition may be enlarged or destroyed. 8 R. C. L. p. 1097. See also 8 R. C. L. pp. 1098 and 1099 The contract has not been complied with and is void. 8 R. C. L. pp. 933, 934; 3 L. R. A. 836. It was necessary for the grantee to express his assent to the contract by signing same. 6 R. C. L. p. 649; Parsons on Contracts, Vol. 2 p. 676; 43 Ark. 184; 3 Ark. 581. There is no mutuality in the contract. 7 Am. & Eng. Ency. of Law (2nd Ed.) p. 114; 96 Ark. 184; 90 Ark. 508; 86 Ark. 170; 86 Ark. 252; 110 Ark. 425. The grantor and heirs can maintain the suit. 103 Ark. 467; 13 Cyc. 692; 50 Ark. 141; 50 Col. 108; 8 Pick 284. There was a breach of condition for support in that their condition was rendered intolerable. 13 Cyc. 698; 56 Wis. 514; 59 Ill. 46; 69 Me. 293; 1 Texas 245; 96 Wash. 324; 134 Ark. 88. A court of equity has power to rescind the contract and reinvest the title. 67 Ark. 526; 103 Ark. 464; 86 Ark. 252; 134 Ark. 91; 247 Ill. 510. Claim of adverse possession cannot be maintained. 94 Ark. 51; 1 A. L. R. 1349; 87 S. W. 832; 44 Tex. 140; 1 Cyc. 1026; 76 Ark. 405; 112 Ala. 480; 87 Ark. 374; 3 U. S. McLean 457; 83 Ark. 374; 94 Ark. 51. Upon the breach of the contract, appellees became tenants in com-

mon, and the statute of limitations would not run against them. See C. & M. Dig. Sec. 30 p. 484; 55 Ark. 109. Freeman, Cotenancy and Partiton § 373; Angell on Lmitations, § 420. Possession of life tenant is not adverse to rights of a remainderman during the existence of a life estate. 35 Ark. 84; 58 Ark. 510. There was no waiver of any rights by Retter Goodwin. 18 C. J. 378; 171 Mass. 575; 168 Okla. 1001; 149 Wis. 222. She had the right to expect performance as long as she lived. 18 C. J. 368; 6 R. C. L. 894; 1 Gray (Mass.) 365.

SMITH, J., (after stating the facts). It is first insisted that the deed was void because the agreement to support, constituting the consideration therefor, was not signed by Julius Goodwin. We think, however, that the deed was not void for the want of mutuality or because Julius Goodwin had not signed it, as appellees insist. The acceptance of the deed was itself an assent to its conditions. *Fine* v. *Lasater,* 110 Ark. 425; *Wood* v. *Park,* 97 Ark. 13; *Whittaker* v. *Trammell,* 86 Ark. 251; *Boyd* v. *Lloyd,* 86 Ark. 169.

It is also insisted by appellees that the provision in regard to support was a condition precedent, and that no title passed until the condition had been fully performed. But we do not agree with this contention. The title to the land passed upon the execution and delivery of the deed, subject to be defeated, however, by a failure to perform the condition imposed — that of support. *Skipwith* v. *Martin,* 50 Ark. 141; *Cooper* v. *Green,* 28 Ark. 48; *Kampman* v. *Kampman,* 98 Ark. 328; *Swain* v. *Beakley,* 133 Ark. 406; *Terry* v. *Taylor,* 143 Ark. 208; *Moore* v. *Sharpe,* 91 Ark. 407.

On behalf of appellants it is insisted that the condition imposed was performed, and further, that, if not, the forfeiture was waived; and it is also insisted that appellees were barred both by laches and limitations from maintaining this suit. We do not consider the questions of waiver or of laches or of limitations, as, in our opinion, the testimony shows that the condition, the

nonperformance of which would have defeated the conveyance, was in fact performed.

In *Boyd* v. *Lloyd, supra,* Justice BATTLE said that an agreement to support the grantor during his lifetime is everywhere regarded as a sufficient consideration for a deed; and, in *Edwards* v. *Locke,* 134 Ark. 80, the court reviewed the authorities dealing with the right of the grantor to set aside such a conveyance, and the right of the grantor in such a deed to sue for rescission, upon condition broken, was there again recognized, as it had been in the earlier cases, and the holding of our earlier cases on the subject was summarized as follows: ''The rationale of the doctrine is that an intentional failure upon the part of the grantee to perform the contract to support, where that is the consideration for a deed, raises the presumption of such fraudulent intention from the inception of the contract, and therefore vitiates the deed based upon such consideration. Such contracts are in a class peculiar to themselves, and, where the grantee intentionally fails to perform the contract, the remedy by cancellation, as for fraud, may be resorted to, regardless of any remedy that the grantor may have had also at law. See *Salyers* v. *Smith,* 67 Ark. 526; 4 R. C. L., p. 509, § 22; *Russell* v. *Robins,* 247 Ill. 510; *Stebbins* v. *Petty,* 209 Ill. 291; *Spangler* v. *Warborough,* 23 Okla. 806; see also *Bruer* v. *Bruer,* 109 Minn. 260; *Abbott* v. *Sanders,* 80 Vt. 179; *Glocke* v. *Glocke,* 113 Wis. 303. See also case note 43, L. R. A. (N. S.), 918-925.''

There are certain questions raised in the briefs which, as we have said, we find it unnecessary to consider, as we think the conclusion which we have reached from a consideration of the testimony in the case, that the condition was not broken, is decisive of the case, and we dispose of the questions raised by a decision of that question of fact.

The testimony on behalf of appellees, in addition to that already recited, was that Julius was a good man, but taciturn, and that his wife ran the establishment, her husband included; that she was irritable and exacting,

and, on one occasion, threw a stick at one of the girls, and, on another occasion, threw a stick at Mrs. Hardy Goodwin.

A fair interpretation of the deed in question is that the beneficiaries named in the deed were not only to be furnished food and shelter and clothing and other physical necessities, but these were not to be provided under condition which made it impossible for them to use and enjoy those necessities in ease and peace, as was said in *Edwards* v. *Locke, supra,* and it would not have been a compliance with the condition of the deed to have furnished these necessities but to have done so under circumstances which rendered the condition of the beneficiaries intolerable.

On behalf of appellants it is denied that Mrs. Julius Goodwin threw a stick at either Mrs. Hardy Goodwin or at one of the daughters, but, even so, this did not drive either of them from the home.

So far as the daughters are concerned, it is clearly established that they were furnished a home as contemplated by Hardy Goodwin upon the execution of the deed. They were furnished a home during infancy and until their marriage. Mrs. Hardy Goodwin was also furnished a home and support until the marriage of her youngest daughter, and, although she was invited to remain as a member of the Julius Goodwin family, she stated that she preferred to live with her baby child.

It does not appear that Mrs. Hardy Goodwin was ever afterwards asked to return and live at the old homestead, and it does appear that no contributions to her support were made by Julius Goodwin's widow or his children. Neither does it appear that Mrs. Hardy Goodwin ever called upon the widow or children of Julius Goodwin for any contributions, as required by the deed. The testimony shows that Mrs. Hardy Goodwin enjoyed a pension which sufficed to supply her personal wants. She apparently preferred to live with her daughter, rather than her son, or the members of her son's family after his death, and was never shown to have complained

that the provision of the deed in regard to her support was not complied with. On the contrary, it affirmatively appears that no such requests were ever made.

A similar question was presented in the case of *Salyers* v. *Smith,* 67 Ark. 526. There a conveyance had been made to a daughter and her husband by the father, on condition that the grantor should be supported as long as he lived. There was a decree against the daughter and her husband, requiring them to make monthly payments, in default of which the land conveyed was ordered sold. This court, in reversing that decree, held that, until the appellants—the daughter and her husband—refused to render the support required by the deed, or had done some act tantamount to a refusal to do so, there was no cause of action.

So here we conclude that, after providing the daughters a home and support for the time and manner required by the deed, and after likewise providing for the grantor's widow so long as she chose to receive the support provided by the deed, the conveyance is not to be defeated because contributions to Mrs. Hardy Goodwin were not continued when they were never requested or refused.

The decree of the court below, setting aside and canceling the deed, will therefore be reversed, and the cause will be remanded with directions to enter a decree dismissing the complaint as being without equity.