SWETCOFF v. FELTS.

4-5394                                                 125 S. W. 2d 469

Opinion delivered February 27, 1939.

*Chas F. Cole,* for appellant.

*Dene H. Coleman* and *S. M. Casey,* for appellee.

SMITH, J. Pennie Swetcoff came to this country from Bulgaria in 1914, and he has not yet learned to write our language, but has been taught to sign his name. He came to Batesville in 1935, and opened a cafe in that city, which he operated as "Pennie's Cafe." He became acquainted with C. C. Felts about January, 1936, when the latter was employed as a laborer on a sewer project in Batesville, and he gave Felts employment in his cafe at a wage of $6.00 per week. This wage was increased from time to time until it reached $12.50 per week. Felts was finally paid $14 per week, and there is a controversy as to whether the last increase of $1.50 per week, from $12.50 to $14.00, included room rent. Swetcoff was then rooming in the home of Felts, who was a married man.

In addition to his cafe, Swetcoff owned a tract of land in Texas, the present value of which does not appear, but we have the impression that it is of small value, although Swetcoff paid $1,500 for it during an oil boom in the vicinity of the land conveyed. On July 21, 1937, Swetcoff, who was an unmarried man, executed and acknowledged a deed to the land and a bill-of-sale to the cafe, conveying both to Felts. The deed does not appear in the record, but the bill of sale, which makes no reference to the deed, recites that it was executed "for and in consideration of the sum of Eleven Hundred and No/100 Dollars to me in hand paid by Conway Felts at and before the delivery of these presents." It appears to be entirely certain that the recited consideration was not paid. The testimony does not show what the consideration for the deed was.

Swetcoff contracted tuberculosis, and now has that disease in an advanced stage. He was advised by a physician that his work about the cafe would endanger the

health of his customers, and he testified that Felts told him frequently that the place would be closed if he (Swetcoff) continued to operate it, and that it was the consideration of this threat or fact which induced the execution of the bill of sale.

The testimony is in hopeless conflict as to the operation of the cafe after the execution of the bill-of-sale, but we think the preponderance thereof is to the effect that Felts operated the cafe after the execution of the bill-of-sale under the supervision and direction of Swetcoff, until the fall of that year, when Swetcoff became unable to give the business any attention.

Swetcoff brought this suit to cancel the bill-of-sale, and alleged that "this plaintiff has never received any consideration to support said bill of sale; that said bill of sale was executed by the plaintiff to the defendant with the understanding and agreement by the defendant that he would hold the property as trustee for the plaintiff and for his use and benefit, and it was never intended by the plaintiff nor the defendant that said bill-of-sale would be binding upon the parties thereto."

The chancellor denied the relief prayed, and from that decree is this appeal.

The testimony convinces us that Felts paid nothing for the business, and that the real agreement of the parties was that Felts should operate the business during the lifetime of Swetcoff and that Swetcoff should be supported out of its earnings. In other words, there was a conveyance of the title to the cafe, and the consideration for the conveyance was that Felts should support Swetcoff during the remainder of Swetcoff's life. Felts, in his answer, alleges, in effect, that this was the consideration for the bill-of-sale, and that he had complied with its undertaking up to the time of the institution of this suit, and the rendition of the decree, and that he was ready to continue to do so, and that Swetcoff left his home without cause, but he had continued to pay him the sum of $15.00 per week, and that he was ready and willing to continue that payment.

Swetcoff lived, at the time of the execution of the bill of sale, in the home of Felts. There was no change in the cafe account at the bank with which Swetcoff had done his banking business, but the bank was notified by Swetcoff to honor checks signed by Felts, but against this account checks were thereafter drawn by Swetcoff as well as by Felts. Among others, Felts drew checks against this bank account for the amount of wages he was being paid when the bill of sale was executed, this being done as late as November after the execution of the bill of sale in July, although Felts denied that he had issued any checks to his own order as wages after the execution of the bill of sale.

The bill of sale was prepared by Prior Evans, a Notary Public, and Felts admitted that "I told Prior that he could put in it that I would take care of him (Swetcoff) for the rest of his life, but Prior said it wasn't necessary." When asked, "Was part of the consideration for the execution of that bill of sale, that you were to take care of him (Swetcoff) as long as he lived?" Felts answered: "Yes, sir, I liked Mr. Pennie and wanted to go on taking care of him." Felts testified that even after the institution of this suit he had "offered to continue to take care of him for life, both verbally and by letter. Since then I have been paying him $15.00 per week."

That the obligation to take care of Swetcoff "as long as he lived" was the real consideration for the bill of sale we entertain no doubt.

Swetcoff became dissatisfied and left Felts' home. The reason given by him for doing so was that "They (Felts and wife) got to talking too much about what they were going to do about taking my business away from me."

We have, therefore, as we construe the testimony, the familiar case of one conveying his property to another, upon the condition that the latter should support the former during the remainder of his life.

The court below was evidently of the opinion that there had been no breach of this agreement, and dismissed the suit as being without equity.

Subsequent to the rendition of this decree Felts wrote Swetcoff a letter, in which he proposed to provide for the support of Swetcoff, but upon the condition that Swetcoff should not prosecute an appeal from the decree dismissing the suit. When Swetcoff did not assent to this proposition, Felts discontinued the $15.00 a week payments to Swetcoff, and a motion was thereafter filed to reopen the case and to cancel the bill of sale because of this failure to support, except upon the condition stated. This motion was overruled, and this appeal has been prosecuted to reverse the original decree and the subsequent action of the court in refusing to reopen the case.

The case of *Goodwin* v. *Tyson,* 167 Ark. 396, 268 S. W. 15, announces the principles of law which are controlling here, and they are to the following effect. The title to the property passed upon the execution and delivery of the bill of sale, and the provision in regard to support, although not written into the contract, but which was in fact the consideration for it, was not a condition precedent. The title passed upon the execution and delivery of the bill-of-sale, subject to be defeated, however, by the failure to perform the condition—that of support.

In this *Goodwin* v. *Tyson* case we quoted from the case of *Edwards* v. *Locke,* 134 Ark. 80, 203 S. W. 286, as follows: " 'The rationale of the doctrine is that an intentional failure upon the part of the grantee to perform the contract to support, where that is the consideration for a deed, raises the presumption of such fraudulent intention from the inception of the contract, and therefore vitiates the deed based upon such consideration. Such contracts are in a class peculiar to themselves, and, where the grantee intentionally fails to perform the contract, the remedy by cancellation, as for fraud, may be resorted to, regardless of any remedy that the grantor may have had also at law. (Citing cases).' "

Here, the title to the cafe passed to Felts, but that conveyance was subject to be defeated by the failure on the part of Felts to perform the condition which constituted the consideration—that of support of Swetcoff.

Felts did not repudiate that obligation, and insists that he was performing it when this suit was instituted, and he proposed to continue to discharge his obligation to Swetcoff, provided this suit was dismissed. We do not think that the institution of this suit operated to discharge Felts from the continued performance of this obligation.

Swetcoff testified that Felts refused to perform this obligation; that his condition was such that he required attentions which he did not receive, while he remained in Felts' home, and that Felts failed and refused to furnish him medicine or the money with which to buy it. Had he established these facts, he would have been entitled to have the bill of sale canceled, upon the ground that the consideration had failed.

But the chancellor did not find this to be true, and we cannot say that his finding is contrary to the preponderance of the evidence; indeed, Swetcoff qualified his statement that Felts did not furnish medicine and medical attention by saying that these expenses had been paid out of the earnings of the cafe. But this is the source from which Felts was to derive money for that purpose. A doctor who attended Swetcoff professionally ten or twelve times during 1937 testified that Felts paid him for this service.

We do not think, however, that the unsuccessful attempt to make this showing operated to discharge Felts from his obligation to support Swetcoff. That obligation subsists, and must be performed unless Felts is willing to surrender the cafe.

Now, it is true that Felts discontinued support to Swetcoff when Swetcoff refused to dismiss his case, but this, under the circumstances of the case, cannot be treated as a breach of the contract. Swetcoff was not demanding support, but was insisting upon the return to him of the cafe, and this unjustified demand imposed upon Felts expenses in defending litigation in which that demand was made, which, so far, he has done successfully.

It was evidently the opinion of the court below that Swetcoff could not insist that the case be reopened and the original decree vacated because support had been discontinued, after the rendition of the original decree, inasmuch as Swetcoff was demanding by his suit, not support, but the return of the cafe.

The equity of the case appears to require the affirmance of the decree permitting Felts to retain the property; but if he wishes to continue to retain it he must resume the support of Swetcoff, and if he should hereafter fail to do so equity would require the cancellation of the bill of sale and the return of the cafe to Swetcoff.

Inasmuch as Swetcoff sought relief which he was not awarded, and to which he was not entitled, the costs of this case must be assessed against him, but Felts will not be allowed to reimburse himself for any costs he may have paid or incurred by withholding contributions to Swetcoff's support, which he must make from the date of this opinion.

Upon filing suit, Swetcoff prayed the appointment of a receiver to operate the cafe, and that order was made, pursuant to which a receiver was appointed, who operated the cafe for a week, then the court discharged the receiver.

In the order discharging the receiver, Felts was ordered to pay the attorneys for the receiver, who were the attorneys for Swetcoff, a fee of $50. We think this was error. The receiver was appointed upon an ex parte application, and upon a hearing seven days later as to the necessity and propriety of a receivership, the court discharged that officer. It was not shown what, if any, duties were performed by the attorneys for the receiver, but for service performed for the receiver for which compensation should be allowed—and that showing has not been made—the fee awarded to compensate such services should be taxed as costs of the case, and not against the party who opposed the appointment of the receiver and secured his discharge and prevailed in the final decision of the case.

As thus modified, the decree will be affirmed.