[No. 2,340.]

ISABELLA McMANUS, ADMINISTRATRIX OF THE ESTATE OF TERENCE B. McMANUS, · DECEASED, v. C. D. O'SULLIVAN, WILLIAM F. CASHMAN, JOHN HAYES, PETER DONOHUE, PATRICK KELLY, C. M. A. BUCKLEY, MARY E. BUCKLEY, CHARLES BAUMAN, GEO. T. BOHEN, DAVID HUNTER AND THOMAS McGUIRE.

ADVERSE POSSESSION OF LAND.—An adverse possession of land which will bar an action to recover possession of it, under the Statute of Limitations, is a possession merely hostile to the particular claim of the other party in the action; to which it is opposed in proof.

IDEM.—Such possession does not lose its character as adverse, because it is in subordination to the title of the paramount proprietor, unless the other party deraigns his claim from such paramount proprietor.

LIMITATION OF ACTIONS.—A person in the mere naked possession of Pueblo land in San Francisco, and whose claim is not connected with the title of the city, and who was ousted in 1861 by a party who thence held adversely to him, cannot insist that such party shall be deprived of the benefit of the Statute of Limitations, because holding in subordination to the title of the city.

STATUTE OF LIMITATIONS.—The Statute of Limitations did not commence running against the city of San Francisco, with reference to the Pueblo lands confirmed to it by the decree of the Circuit Court of the United States, May 18, 1865, until the passage of the Act of Congress of March 8, 1866, quieting the title of the city to said lands.

PRESUMPTION AS TO TITLE ARISING FROM POSSESSION.—The mere fact that a party held possession of Pueblo land within the limits of the city of San Francisco for the period of several years, prior to 1861, and then died, raises no presumption, in an action brought by his intestate to recover the land, that this possession was connected with the title of the city.

PUEBLO LAND IN SAN FRANCISCO.—A person who was in the mere naked possession of Pueblo land in San Francisco, and who did not hold the same under a grant from the authorities of the Pueblo, was not a beneficiary under the decree of the Circuit Court confirming said lands to the city.

IDEM.—A person who was in possession of Pueblo lands in San Francisco prior to 1861, but who was ousted therefrom, did not become a beneficiary under the Act of Congress of March 8th, 1866, and ordinance No. 800 of said city, and the Act of the Legislature confirming it, unless he had recovered possession.

APPEAL from the District Court, Fourth Judicial District, City and County of San Francisco.

The City of San Francisco, as successor of the Pueblo of that name, asserted title to four square leagues of land, and presented its claim to the Board of Land Commissioners created by the Act of Congress of March 3d, 1851. The Board confirmed the claim to a portion of the land, and rejected it for the balance. The city appealed to the District Court, from which Court the case was transferred to the Circuit Court. The Circuit Court confirmed the claim to four square leagues, and the decree was entered May 18th, 1865. From the decree of the Circuit Court a writ of error was prosecuted to the Supreme Court of the United States, and while the case was pending there, Congress, on the 8th of March, 1866, passed the Act "to quiet the title to certain lands within the corporate limits of the City of San Francisco." This Act withdrew the claim from the further consideration of the Courts, so that no patent was issued for the land.

By the said Act of Congress the land was relinquished and granted to the City of San Francisco and its successors, upon the following trusts, namely: "that all the said land not heretofore granted to said city shall be disposed of, and conveyed by said city to parties in the *bona fide* actual possession thereof by themselves or tenants, on the

passage of this Act, in such quantities and upon such terms and conditions as the Legislature of the State of California may prescribe."

The Legislature, by the Act of 27th of March, 1868, prescribed the conditions to be: "Upon the payment to the County Treasurer, of Outside Land assessments (so called), the city relinquishes and grants all its title to the land upon which has been paid all taxes assessed for the five fiscal years preceding the year beginning 1st of July, 1866, unto the persons, or the heirs and assigns of persons, who were, on the 8th day of March, 1866, in the actual *bona fide* possession thereof by themselves or by their tenants, or having been ousted from such possession before or since said day, have recovered or may recover the same by legal process."

The demanded premises were a parcel of the lands thus confirmed to the city.

The other facts are stated in the opinion.

*Calhoun Benham,* for the Appellant.

Was a possession which was adverse to the plaintiff, but not to the city, a bar? It was not. There was no adverse possession. The sole evidence as to the character or intention of the defendants' possession was the plaintiff's admission. That admission did not concede it was exclusive.

Adverse possession must be exclusive of every other right than the one claimed. (Stat. of Limitations, Sec. 10.) The proof, as it stands upon the admission, taking it altogether, is that the defendants did not claim against the city, but, on the contrary, admitted her right. And the bald error is presented, of a Court instructing a jury to find for the defendants when the plaintiff had shown possession with claim of title, and defendants had offered no proof of anything in defense; for such is the result of defendants' showing if a bar was not made out. To bar and to prescribe are correlative. When one can bar he can prescribe, and *e converso.* The defendants could not prescribe. To make title by prescription, they must make it, above all, against the true owner. Here they did not make it against the true owner.

The admission must be sufficient to cover the whole ground of adversariness. (*Sharp* v. *Daugney*, 33 Cal. 313.)

The admission does not concede that they entered under just title. It only concedes the naked possession. The naked possession raises for them the presumption that it began in just title. But the proof that the land belonged to the city—there being no proof that they claimed adversely to the city, either by grant from her or by dispute of her title—shows the possession did not begin in just title, or what is the same, did not begin to make title at all, and so was not an adverse possession to set the Statute of Limitations running. And plaintiff is not committed to the position that defendants' possession was adverse possession because the text of the admission uses those words, for they are used with a qualification. They are coupled with an exception which goes to the very essence of adversariness, namely, the exception of the right of the true owner. This is a case of "qualified adverse possession," spoken of by Sanderson, in *Kimball* v. *Lohman*, 31 Cal. 154. What sort of adverse possession is that which does not give title against the only enemy to be feared, the owner?

The effect of this admission is to place parties as if defendants had proved that they had had possession for five years, and plaintiff had proved that they admitted the title of the city, as they do in their answer.

Did defendants make title by being in possession on the 8th of March, 1866?

They did not. They were not in possession on that day in good faith. They assume they were. Whether they were or not is directly involved in the principal question, whether the plaintiff can recover or not. The Act of Congress does not expressly provide for the case of a party out of possession, but entitled to recover on that day, as the Outside Land Ordinance does; but the effect to withhold title from the defendants at least is secured by the requirement of good faith.

If the plaintiff was entitled to recover on that day, and the defendants knew it; above all, if they had entered unlawfully, and with due notice of the plaintiff's rights, as

they did, they were not in possession on that day in good faith. To say they were owners on that day is *petitio principii.* The maxim is *exceptio non potest adduci ejusdem rei cujus petitur dissolutio.*

In this controversy, neither the Outside Land Ordinance nor the Act of Congress of March 8, 1866, can assist either party. It was so held as to the Van Ness Ordinance in *Keane* v. *Cannovan,* 21 Cal. 291. The case rests upon the maxim quoted. The Van Ness Ordinance gives the land as the Outside Land Ordinance and the Act of Congress of March 8, 1866, give it.

The admission that defendants were in adverse possession against everybody but the city, during a time including the 8th of March, 1866, is not an admission they were so in good faith on that particular day, or at all. It has been suggested that it is. If it is, it must be because there is peculiar virtue in an admission.

*Calhoun Benham, Alexander Campbell, E. J.* and *J. H. Moore,* and *S. Heydenfeldt,* also for the Appellant.

Plaintiff shows prior possession. Prior possession is evidence of right of possession. (*Morton* v. *Folger,* 15 Cal. 275; *Catteras* v. *Cowper,* 4 Taunt. 547; *Allan* v. *Rivington,* 2 Saund. 111, and cases cited in note *a.*) Presumption of right of possession from prior possession is not silenced or rebutted, though it appear that title is outstanding in a third party. (Same cases.) Presumption of title is presumption of the true title, and if that is a given Spanish title, then of that title. Defendants show no title, because they were not on the land in good faith on the 8th of March, 1866. Plaintiff cannot be barred because her trustee, the city, is not barred. Plaintiff cannot be barred, because the title to the land was in the United States until March 8, 1866, a year only before suit was brought. (*Gibson* v. *Chouteau,* U. S. S. C. Cases, 1871.)

*McCullough & Boyd, Sharp & Lloyd, M. H. Myrick,* and *Gray & Haven,* for Respondents.

Where the true title is not in contest; where it is outstanding in the government; where it appears or is admitted that the legal title is outstanding, and that neither party connects himself with it, and their contest is only over those rights in the land that grow out of their respective possessions, there an adverse possession may obtain as between the parties to the contest. (*Page* v. *Fowler*, 28 Cal. 611; *Sharp* v. *Daugney*, 33 Cal. 511; *Vassault* v. *Seitz*, 31 Cal. 230; *LeRoy* v. *Rogers*, 30 Cal. 235.)

And it would seem that this doctrine is a necessary incident or corollary of that other doctrine long since established in this State, that where the plaintiff relies solely upon prior possession, the defendant will not be permitted to show title outstanding in a stranger, to defeat the plaintiff's right of recovery; else, a party in possession of lands in 1850, may recover to-day against one who entered and ousted him, and has held adversely to him since 1851, where the true title is outstanding.

If this be so, then there is no statute of repose, as to the tenure by which the great mass of the lands in this State are held and possessed.

The defendant showing a five years' adverse possession, where the plaintiff relies only on prior possession, shows a better right than the plaintiff, either because of the bar of the statute, or because of a presumed abandonment by the plaintiff in analogy to the statute bar. Either suits our purpose in this case. For more than five years after our entry and ouster, the plaintiff failed to sue. More than five years after her right of action accrued, she asked redress of the Courts. (*Bird* v. *Lisbros*, 9 Cal. 1; *Coryell* v. *Cain*, 16 Cal. 572.)

Being in possession, and in possession adverse to the plaintiff for five years, and the plaintiff failing to connect herself with the paramount title, we show the better right to the possession. Plaintiff will not be permitted to overcome this better right shown in the defendants, any more than would the defendants be permitted, if the plaintiff sued within five years from the ouster, by proving title in a stranger. (*Carleton* v. *Townsend*, 28 Cal. 223.)

*W. H. Patterson*, also for Respondents.

To bar the plaintiff's cause of action, it was only necessary to have an adverse possession as against the plaintiff, because plaintiff is not connected with any right of the City and County, and does not deraign the right to recover from the City and County; and though it might be conceded that the City and County might have recovered against defendants, it does not follow that plaintiff can.

For illustration, the State granted a ninety-nine years term in certain water lots in San Francisco, and subsequently the fee or reversion. A. owned the term in 1860, and B. the fee; B. leased that year to C. for ten years, and C. took and held possession for six years, under his lease from B., but adversely to A. It is evident that while A. would be barred by C.'s adverse possession, yet he would not have had any possession to the exclusion of his landlord, B. So a tenant by courtesy—tenant for life or years, might be barred by an adverse possession against him, while the holder of the reversion would not be. (Sugden's Law of Vendors, 239, 240; 1 Burrows, 60; 2 Salkeld, 422; *Jackson* v. *Schoonmaker*, 4 Johns. 398; *Jackson* v. *Selleck*, 8 Johns. 268, 269; *Lessee of Hall* v. *Vandergrift*, 3 Binney, 374–384, bottom 385; *Jackson* v. *Johnson*, 5 Cow. 102, 103; *Wells* v. *Prince*, 9 Mass. 507, 508; *Wallingford* v. *Hearl*, 15 Mass. 471.)

By the Court, WALLACE, C. J.:

At the conclusion of the plaintiff's proofs the defendants moved the Court for a nonsuit, but the motion was denied. One of the grounds upon which the motion was rested was "that the evidence does not show, or tend to show that the plaintiff or her ancestors, predecessors or grantors, or either of them, were seized or possessed of the premises, or any part thereof, at any time within five years next before the commencement of this action, or at any time since." In denying the motion for a nonsuit the judge observed that it would have been granted, had it distinctly appeared by the plaintiff's proofs that the defendants had held adverse pos-

session of the premises for the period of five years next before the commencement of the action; and further, that should the defendants establish a possession of that character upon their part, he would thereupon instruct the jury to find their verdict for the defendants. The record then proceeds as follows: "Here the plaintiff admitted that defendants would introduce such proofs, and also would produce witnesses to prove that such possession of defendants was taken January 1st, 1862, under claim of title adverse to the plaintiff, but not to the City of San Francisco. Whereupon the plaintiff, by her counsel, in open Court admitted, for the purpose of this matter, that the defendants were in the actual, open, exclusive and notorious possession of the land in controversy for more than five years prior to the commencement of this suit, and on and ever since the 1st day of January, A. D. 1862, and had held the same from that date adversely to the plaintiff, her ancestors, predecessors and grantors, and to the estate of T. B. McManus, deceased, but not to the City and County of San Francisco." Upon the admission thus made, the jury were directed to find a verdict for the defendants, which being done, judgment was thereupon rendered, from which judgment the plaintiff presents this appeal.

1. The evidence on the part of the plaintiff tended to show that her intestate was in possession of the premises sued for from some time in 1853 until January, 1861, when he departed this life.

The motion for the nonsuit, in so far as it questioned the sufficiency of the possession held by McManus in his lifetime, was determined in favor of the plaintiff, and the decision having been put altogether upon the legal effect of the possession of the defendants, taken subsequent to his death, the propriety of the ruling in the latter respect is the only matter to be considered here.

2. The premises sued for lie within the limits embraced in the judicial decree in the case of the *United States* v. *The City of San Francisco*, entered in the Circuit Court May 18, 1865, within the area defined in order No. 800; and the Act of the Legislature of March 27, 1868, ratifying that

order; and the Act of Congress of March 8, 1866, entitled "an Act to quiet the title to certain lands within the corporate limits of the City of San Francisco."

3. If we are to consider the case of the plaintiff as resting solely upon the prior possession of her intestate, and wholly disconnected with the decree of the Circuit Court, the order of the Board, the Act of the Legislature, and the Act of Congress already referred to, it is plain that the possession of the defendants, if adverse in its character, was sufficient, in point of mere duration of time, to bar the plaintiff of a recovery in this action, for their possession, such as it was, began in January, 1862, and this action was commenced only in August, 1867.

4. It is claimed by the plaintiff, however, that the possession of the defendants was not of an adverse character, within the meaning of the Statute of Limitations; and this view is rested in part upon the circumstance that the possession relied upon, though held in hostility to the claim of the plaintiff, was nevertheless held in admitted subordination to the title of the City of San Francisco. But it has been repeatedly determined in this Court that a possession taken and held by a defendant for the requisite period, in hostility to the title or claim set up by a plaintiff in the action of ejectment, amounts to an adverse possession against the plaintiff, sufficient to bar a recovery, even though the defendant, while so in possession, admitted the validity of a title outstanding and in a third person. Thus, in *Page* v. *Fowler*, 28 Cal. 611, the case turned upon the question as to whether the possession of the defendant in that action was adverse in its character, and it was held that it was, notwithstanding the defendant entered upon the land, and claimed to hold it, conceding all the while that the title was in the Government of the United States, and which title he was avowedly endeavoring, by entry and occupation as a pre-emptioner, to obtain; the Court observing that to constitute adverse possession it is sufficient if the defendant in possession claims the right against all the world, except the United States.

Inasmuch as it was conceded in that case that the true

title to the premises was in the United States, and that if the defendant should not succeed to it as a pre-emptioner, then it necessarily would go to Page under the Act of March, 1863, concerning the Suscol Ranch, the claim "against all the world" was after all a claim in hostility to Page alone, who was the only person challenging the right of the defendant in that action. The case came again to this Court (37 Cal. 108), and it was then held that a person in possession of land with the intent in good faith to obtain the title thereto under the pre-emption laws of the United States, must be taken to be in adverse possession under claim and color of title, in such sense that an action could not be maintained against him to recover hay cut upon the premises so in his possession. Again, in *Farrish* v. *Coon*, 40 Id. 57, in defining the phrase "adverse possession," it was said here as follows: "The very essence of an adverse possession is that the holder claims the right to his possession not under, but in opposition to, the title to which his possession is alleged to be adverse." So in *Hayes* v. *Martin*, 45 Cal. 559, this Court used the following language upon this point: "It is not requisite that a party who relies upon the statute should show that he claims title in hostility to the United States. He may admit title in the United States, either with or without a claim on his part of the right to acquire the title from the United States, and it is sufficient if he has such possession as is required by the statute, and claims in hostility to the title which the plaintiff establishes in the action." In view of these authorities, and others of a like import in this Court, which could be found, did time permit, an adverse possession must be taken to mean a possession merely hostile as against the particular claim to which it is opposed in proof; and it results that the possession of the defendants here, though held in admitted subordination to the title of the city, was nevertheless adverse to the title set up by the plaintiff, and therefore sufficient to defeat it, unless the plaintiff deraigns her claim from the City of San Francisco, which is the only remaining point to be considered.

5. The lands in controversy lie within the limits defined

by the decree-of the Circuit Court of the United States, of
May 18, 1865, and without the corporate limits of the city
of San Francisco, as defined by the Charter of April 15,
1851. Under the rule laid down in *Gardiner* v. *Miller*, (47
Cal. 570), the statute commenced to run against the title of
the city only upon the passage of the Act of Congress of
March 8, 1866, and, therefore, if the claim of the plaintiff
is connected with the title of the city, the Statute of Limit-
ations had not run against it when this action was brought.
There was no direct proof at the trial that the plaintiff's
claim was in anywise connected with the claim of the city.
Counsel argue, however, that the presumption that it was,
arises from the fact that the plaintiff's intestate for some
seven or eight years next before his death, held possession
of the premises, which were subsequently, and some four
years after his death, confirmed to the city. We know of
no rule of law upon which such a presumption could be
indulged. That a party in possession is presumed to be
rightfully there is true, and in that sense possession raises
a presumption of right and of title in the possessor. This
is the general rule, and is the doctrine of the cases of *Hawx-
hurst* v. *Lander*, 28 Cal. 331, relied upon by counsel; and
also of *Hill* v. *Draper*, 10 Barb. 458; *Allen* v. *Rivington*, 2
Saund. 110, and *Catteras* v. *Cowper*, 4 Taunt. 542, cited by
him. But a mere naked possession antecedently held by
the plaintiff's intestate, and not sufficient in point of dura-
tion 'to entitle him to the protection of the Statute of Limit-
ations, cannot operate to create a presumption that the
claim of the possessor was connected with any particular
source of title. It is true that under some circumstances a
presumption of a grant to a party in possession may be
created, and an instance of that character is found in *Mather*
v. *The Ministers of Trinity Church*, 3 Sergt. & R. 507, cited
by counsel, where the Court presumed a grant to the
plaintiff from the Commonwealth for the premises, or a
right of pre-emption thereto, upon it appearing that the
premises, being in the midst of a very thickly settled coun-
try, and being extremely valuable, had been in the posses-
sion of the plaintiffs and their predecessors some ninety

years, the Chief Justice observing that there is no absolute rule prescribed by law on which to found this kind of presumption, and that circumstances may require in different cases a different length of time. But there is no perceptible similarity whatever between the circumstances of that case and those of the one now under consideration, and no foundation is laid for such a presumption, in favor of the plaintiff here.

We are therefore of opinion that the mere possession of McManus did not, in itself, tend to connect his claim with that of the city, nor do we think that the case of the plaintiff derives any aid from the decree of the Circuit Court of May 18th, 1865, nor the Act of Congress of March 8th, 1866, (through which decree and Act the title of the city is derived,) nor from the Ordinance of the Board No. 800, nor the Act of the Legislature ratifying that ordinance, which deal with the terms and conditions upon which that title is to pass to the beneficiaries pointed to in the Act of Congress.

McManus was not a beneficiary under the decree of the Circuit Court, for he did not hold the premises under a grant from the authorities of the Pueblo, town or city of San Francisco; nor was he, nor was the plaintiff as his personal representative, a party in the *bona fide* actual possession of the premises, personally or by tenants, at the time of the passage of the Act of Congress—for the actual possession, whether held *bona fide* or not, was at that time in fact held by the defendants, as we have seen already, in hostility to the claim of the plaintiff. If it be even conceded, then, that (under the authority conferred upon the Legislature of the State by the Act of Congress to determine the mere quantity of land which the beneficiaries referred to therein were to receive and prescribe the mere terms and conditions upon which such beneficiaries were to receive the lands), it was competent to the Legislature to create a new and distinct class of beneficiaries as being persons who (though not in actual possession by themselves or tenants on the day of the passage of the Act of Congress), having been ousted from possession before or since

that day, had recovered or might recover the same by legal process, the case of the plaintiff is not brought within the latter category. She had not recovered the premises before the passage of the Act of the Legislature, nor has she recovered since then. If the Act of Congress is, even therefore, to be taken, with the modification engrafted thereon, or attempted to be, by the Act of the Legislature confirming Order No. 800 of the Board, the case of the plaintiff is thereby brought directly within the views announced in *Pickett* v. *Hastings*, 47 Cal. 270, in which case we held, upon the construction of the provisions of the Van Ness Ordinance, in this respect similar to those we are now considering, that where an ouster had occurred, the fact of recovery had was indispensable to constitute a person a beneficiary.

It results from these views that the action was barred, and that the judgment of the Court below was correct, and should be affirmed ; and it is so ordered.

Mr. Justice McKINSTRY did not express an opinion.