## W. H. Smith v. Jesse J. Jones et al.

### No. 2104. Decided December 14, 1910.

**1.—Limitation—Adverse Possession—Extension of Boundaries—Question of Fact.**

Whether the extension of fences and improvements by one holding possession of a tract of land across the boundaries of an adjoining tract is sufficient to raise a question of fact as to an adverse holding against the owner of the latter tract, as to each case arising, must depend on its particular circumstances, and slight additional facts may suffice to take the question of adverse possession out of the province of the court and into that of the jury. (P. 635.)

**2.—Same—Case Stated—Cases Distinguished.**

In a case where one in possession of a tract of land as tenant, erroneously believing that an adjoining tract was public domain, extended his enclosure across the boundaries of the latter, erected a residence and other improvements thereon, and had 160 acres thereof surveyed, intending to acquire it from the State as a homestead donation, the evidence is considered and held to present a question of fact as to whether his possession so held was adverse to the true owner. Bracken v. Jones, 63 Texas, 184; Holland v. Nance, 102 Texas, 177; Bender v. Brooks, 127 S. W., 168, distinguished. (Pp. 633–635.)

**3.—Adverse Possession—Patented Land Occupied as Public Domain.**

The mere fact that one in possession of land holds it in subordination to the State is not necessarily inconsistent with the conception of a holding in hostility to others, if openly disputing their claims to title while pursung a supposed right to acquire same from State. But the mere holding of it under the belief that the land is the State's and with the purpose of acquiring it lawfully at some future time, does not define the attitude of the possessor as hostile to the claim of an owner of whose existence he is ignorant. (Pp. 636–638.)

**4.—Same—Case Stated.**

Possession of lands patented to another by the State was taken and held for ten years by one who believed it to be public land, with the intention of acquiring title from the State as a homestead donation. He disclaimed having so held it with intention to acquire by limitation the title of the true owner, of whose claim he was ignorant. Held, that his possession was not adverse to such owner, and he acquired no title by limitation against such owner. Schleicher v. Gatlin, 85 Texas, 272, limited and followed. (Pp. 636–638.)

Error to the Court of Civil Appeals for the First District, in an appeal from Newton County.

Smith obtained writ of error upon a judgment of the Court of Civil Appeals which reversed and rendered against him a judgment in his favor by the trial court, in an action by Jones and others for the recovery of land.

*W. W. Blake,* for plaintiff in error.—One holding peaceable and adverse possession of 160 acres of land to definite and marked boundaries, occupying, cultivating, using and enjoying the same for a period of more then ten consecutive years, has full title precluding all other claims to the marked boundaries claimed by him. Encroachment applies to land other than that upon which the occupant lives and never to the land he lives on. Word v. Drouthett, 44 Texas, 369; Cox v. Sherman Hotel Co., 47 S. W., 808; Bruce v. Washington, 15 S. W., 1104; Smith v. Simpson Bank, 113 S. W., 568; Craig v.

Cartwright, 65 Texas, 421; McManus v. Mathews, 55 S. W., 589; Holiday v. Cromwell, 37 Texas, 437; Converse v. Ringer, 24 S. W., 705.

The trial court was not in error in his judgment on the plea of limitation; the defendant's house in which he lived being on the land in controversy, and within the boundaries designated by his survey, he was entitled to recover regardless of the extent of his enclosures, other than the lines of his survey, and regardless of any mistake he may have made as to the ownership at the time he settled the land. Converse v. Ringer, 24 S. W., 705; Langley v. Warren, 33 S. W., 304; Cartwright v. Pipes, 9 Texas Civ. App., 309.

*T. C. Ford* and *Baker, Botts, Parker & Garwood,* for defendants in error.—Under the testimony, the defendant W. H. Smith was not entitled to recover, on his plea of limitation, any of the land in controversy, in excess of about one acre, which was contained within his enclosure, for the reason that he occupied essentially the position of an encroacher, his fields and improvements being principally on the adjoining survey, and extending over on the Stephen Williams survey only so as to include about one acre. Bracken v. Jones, 63 Texas, 184; Titel v. Garland, 99 Texas, 201; Rice v. Goolsbee, 99 S. W., 1031.

Where a naked possessor has his holdings and inclosures on one survey of land, but extends them over on adjoining survey or tract, so as to include only a small portion of such adjoining tract, his possession will not be extended by implication so as to include more of such adjoining tract than he actually occupies, in the absence of actual or constructive notice to the owners of such adjoining tract that such naked possessor claims more, such occupancy itself not being such notice. See authorities under preceding proposition; also, Alexander v. Polk, 39 Miss., 737, 755.

The trial court erred in rendering judgment for the defendant for any of the land in controversy, because the undisputed evidence shows that said defendant's possession or occupancy, if any he had, of said land, or any part thereof, was not adverse and hostile to plaintiffs and those under whom they claim title. Sleicher v. Gatlin, 85 Texas, 270; Beaumont Lumber Co. v. Ballard, 23 S. W., 920; Norton v. Collins, 1 Texas Civ. App., 276; Converse v. Ringer, 6 Texas Civ. App., 56; Cartwright v. Pipes, 9 Texas Civ. App., 311; Blum Land Co. v. Rogers, 11 Texas Civ. App., 185; Flewellen v. Randall, 74 S. W., 49; Newton v. Alexander, 44 S. W., 417; Longley v. Warren, 11 Texas Civ. App., 269; Beale v. Hite (Ore.), 57 Pac., 323; Satterwhite v. Rosser, 61 Texas, 166; Gay v. Mitchell, 35 Ga., 139, 140; Bell v. Fry, 5 Dana (Ky.), 344; Buckley v. Taggart, 72 Ind., 236; Smith v. Burtis, 6 Johns., 197; Jackson v. Sharp, 9 Johns., 163; Dothard v. Denson, 72 Ala., 571; Alexander v. Polk, 39 Miss., 737; Missouri Lumber and Mining Co. v. Jewell (Mo. Sup.), 98 S. W., 578, 579.

MR. JUSTICE WILLIAMS delivered the opinion of the court.

The plaintiff in error was one of the defendants in the District

Court, in this action brought by the defendants in error to recover a tract of 640 acres of land known as the Stephen Williams survey. The questions arise out of facts on which W. H. Smith relied to sustain his claim to 160 acres under the ten years statute of limitations. The history of the possession is as follows:

Enoch Smith, the father of C. C. Smith and of plaintiff in error, in 1873 and 1874, lived on the Enoch Smith survey, which adjoins the Williams survey on the east, and his two sons, it seems, at that time lived with him. During that time, at any rate, C. C. Smith cultivated a field on his father's land in the northwestern part of the Smith survey, and, supposing the land just west of it to be vacant, he determined to acquire 160 acres from the State for a homestead, and in 1873 in pursuance of that purpose caused a survey of that quantity to be made in the northeast corner of the Williams tract. That is the land in controversy. After the, survey he made his residence in a house which he put across the line dividing the two surveys, but mostly on the tract of 160 acres. Early in 1874 he sold his claim to his brother, W. H. Smith, making a deed, so the evidence at least tends to show, describing the tract in controversy. By one or. the other a smoke house and corn crib were built on the 160 acre tract near the dwelling, and about one acre of land was cleared and put in cultivation and enclosed with the land, ten or twelve acres, already in cultivation in the field on the Smith survey. The evidence indicates that in locating the residence C. C. Smith intended thereby to occupy the land in controversy as his home and that there was no purpose to put the house on the Smith survey. After he sold to plaintiff in error the latter entered into possession and continued the use of the land as indicated by the improvements, in connection with the field before mentioned on the Smith survey. Some time after taking possesison W. H. Smith bought 60 acres on his father's survey adjoining the land in suit, including the field before mentioned, and for about fifteen years he maintained possession and use of the two tracts together as his home. Neither he nor C. C. Smith ever intended to take the property of anyone else, or as he expressed it, to steal the land or to make an appropriation of it fraudulently or dishonestly, but both believed it was vacant land and intended to obtain it lawfully from the State as a homestead donation. He testified that he always claimed the land, but plainly this only meant that his claim was for the purpose and in the way stated; and when, after fifteen years, he became satisfied that he could not so acquire the land, he left it, removing all the houses by means of which he had held the possession.

The Court of Civil Appeals, reversing the District Court, applied the doctrine enforced in such cases as Bracken v. Jones, 63 Texas, 184; Holland v. Nance, 102 Texas, 177, and Bender v. Brooks, 127 S. W., 168, holding that the evidences of possession lying along and near the boundary line of the two tracts were not sufficiently open and unambiguous to charge the owner of the Williams survey with notice that his land was claimed. The court also applied the doctrine of Schleicher v. Gatlin, 85 Texas, 270, to the effect that a possession taken and held under such a mistake as to ownership and

with such a purpose as that indicated by the evidence in this case was not hostile to the true owner. It was thought by this court, when the writ of error was granted, that the Court of Civil Appeals had probably extended the doctrine of the first named cases too far, and that the other needed some elucidation from this court, in view of the many cases in which its application has been discussed in the Courts of Civil Appeals, and of the action of this court in refusing writs of error in several of those cases in which conflicting views have been expressed in opinions of those courts.

A careful scrutiny of the evidence has convinced us of the correctness of our impressions as to the first holding. The case differs from those relied on in some important particulars. In Bracken v. Jones and Holland v. Nance owners of lands, in using them, mistook the exact locations of their boundaries and extended their fences across their lines so as to take in small parts of adjacent tracts belonging to others. In Bender v. Brooks the possessor held land under a contract of purchase and obtained permission to use, as tenant, a part of an adjacent tract from a claimant thereof, assumed for the purposes of the decision not to have been the true owner, and extended the fence inclosing his own land across the line and included thereby a part of the adjoining land. The case in its leading facts was like the two first mentioned, except that the possession was first taken intentionally and by tenant. These differences were held not to be decisive, substantially, because, from its external manifestations the possession appeared, and could properly .be considered by the owner, to be a part of that rightfully asserted by the possessor of his own land and did not therefore have that clear and unambiguous quality essential to an adverse possession hostile to the claim of the true owner. The facts were held to present a question of law and not one of fact for the jury. It must be kept constantly in mind that, in applying a proposition like that, the facts of particular cases must be carefully regarded and that additional facts may easily take the question, whether or not the evidences of possession and adverse claim were sufficiently certain and unequivocal to give notice to reasonably diligent owners, out of the province of the court and into that of the jury.

Here the possession was taken, not by an adjoining proporietor, but by a mere tenant, or cropper, on the adjoining land. It was taken by the location upon the land in dispute of a dwelling house and other buildings incident to the home, for which purpose the land was afterwards held and used. This was in pursuance of a survey, itself an act of notoriety done with the definite purpose of establishing the home. The home thus established became the nucleus about which the other concomitants of possession gathered. In the other cases the reverse was true.

It may be that there was enough uncertainty left by the circumstances to raise a question of fact as to the sufficiency of the possession in the respects before referred to, but we think it is not true that those circumstances were clearly such as to justify the holding as matter of law that the possession was too deceptive in its appearances to support the defense.

Were there nothing else to sustain the judgment of the Court of Civil Appeals it would follow that, in reversing the judgment on the first ground, it should have remanded the cause for a new trial on the question of fact stated. But we think the other position taken by the court is correct. Stated as we hold it to be correct, the proposition is, that evidence showing no more than that a possession, relied on to sustain the defense of limitation, was taken and held under the mistaken belief that the land was public domain, with the purpose of acquiring it from the State by compliance with the law authorizing such acquisition at some time in future, is legally insufficient to show that such possession was hostile to anyone. A broader proposition than this is asserted by many authorities, viz.: that a possession must be adverse and hostile to the whole world in order to be so as to anyone. Others deny that this proposition is universally true, and hold that a possession may be sufficient as against one as to whom it is in fact hostile although held in recognition of the title of the State or government. The leading cases of the latter class have exhibited controversies between plaintiffs and defendants in which the former have asserted titles already acquired from the government, and the latter have held exclusive possession, while disputing the validity of such titles and proceeding to obtain for themselves the title asserted still to be in the government. Some cases, however, seem to have assumed that the bare fact of possession taken under the belief that the ownership is in the sovereign and with the purpose to acquire the land from the sovereign in accordance with law, makes such possession adverse to every one but the sovereign. This is the proposition to which we do not agree, and it is the one which is essential to the defense in this case. The subject in its various aspects is discussed in the following cases in other jurisdictions: 1 Cyc., 1027; 1028; Hayes v. Martin, 45 Cal., 562; McManus v. O'Sullivan, 48 Cal., 7; McCracken v. San Francisco, 16 Cal., 591; Johnson v. Gorham, 38 Conn., 519; Altschul v. O'Neill, 35 Oreg., 202, 221; Beale v. Hite, 57 Pac., 323; Missouri Lumber Co. v. Jewell, 98 S. W. (Mo.), 578; Mather v. Walsh, 17 S. W. (Mo.), 757; Bracken v. Union Pac. Ry. Co., 75 Fed., 347; Northern Pac. Ry. Co. v. Kranich, 52 Fed., 911; Francoeur v. Newhouse, 43 Fed., 236; Skipwith v. Martin, 50 Ark., 141; Moore v. Brownfield, 7 Wash., 23.

We do not think that the mere fact that one in possession holds in subordination to the State, is necessarily inconsistent with the conception of a holding in hostility to others, and, hence, do not agree that it is always true that a possession, in order to be sufficient, must be adverse to the whole world. A possession, acknowledging a better right in the State, may be asserted by excluding, even by force, all other claimants, and openly disputing their claims of title, while the possessor is asserting and pursuing that which, if his assumption of title in the State were well founded, would be a legal right to acquire it. It could hardly be denied that a possession so maintained would in fact be adverse to the other claimants. If one who had held such a possession for the requisite period should become the plaintiff in trespass to try title, the bare proof of the facts stated might not enable him to recover, since it would not

show title against the world. If he should go further, however, and show that the title had been in one as to whom his possession had been adversely held, the question would arise whether or not he had acquired that title. As it has arisen in the cases referred to, the question has been as to the sufficiency of such a possession as a defense, and we do not dissent from the view that it may be sufficient for that purpose.

The difficulty with cases in which there is evidence of no further facts than those in this, as we view it, is that it is not made to appear that the possession was adverse and hostile to anyone; for the mere holding of it under the belief that the land is the State's and with the purpose of acquiring it lawfully at some future time, does not define the attitude of the possessor as hostile to the claim of an owner of whose existence he is ignorant. What is it that gives the adverse quality to a possession otherwise sufficient? The statute says it must be held under "a *claim* of right inconsistent with' and hostile to the claim of another;" and this plainly refers to a claim of the possessor, when he is holding only for himself. Of course there are relations, such as those between landlord and tenant, vendor and vendee, cotenants, etc., in which the actual occupancy of one is an assertion of the claim of the others as well as of his own. These are cases of privity of possession in which the claims of the two, in contests with third persons, may be regarded as one, to which the possession is to be referred. Nothing of that sort exists here. The State had no claim to the land and the defendant occupied no relation by virtue of which he could by his possession assert a claim for the State. He did nothing to give rise to a·claim of right or title, and never pretended to have any, in himself. It is true that, under the decisions, as we shall see, a "claim" need not be an assertion of a right or title to the land, in order to satisfy the statute; but it is also true that evidence showing the assertion of right or title in the possessor, of itself, usually gives to the possession the necessary character of hostility to all others; and where such evidence is wanting, the adverse quality must be inferred from other facts. Do the facts stated warrant such an inference here? "Naked possession will secure title . . .; and the circumstances under which the possession is taken are altogether immaterial to the right, provided the occupant *claims* for himself and adversely to others. No matter how tortious or wrongful may be the seizure, if possession be continued for the time limited by statute, it will give title." Charle v. Saffold, 13 Texas, 112; Craig v. Cartwright, 65 Texas, 423. And the possession having these characteristics is sufficient even if taken for the sole purpose of obtaining title by limitation. Craig v. Cartwright, 65 Texas, 424. It is therefore true that "a chain," to satisfy the statute, may be only such as is involved in a mere maintenance of possession of, and the exercise of dominion over, the land, provided there be present the attitude of hostility and exclusiveness towards the true owner; but it is still true that the facts must give rise to the inference of a claim or an attitude of that character where there is no color or claim of title. In this the evidence fails. No inference can be drawn of hostility to, or denial of, the title of an owner

of whose ownership the defendant had no suspicion. · The fact which he thought to be true, if it had existed, would have made his entry lawful. To say that he intended to dispute the title of anyone to whom the State may have granted the land is to fix upon his acts a wrongful character not given to them by anything he said or intended. Nor can it be said that, at any time after the original entry, the defendant's position changed either by converting that· which he thought to be the right of the State into a claim of title of his own, or by abandoning his original attitude and setting up a claim of the other character to which we have referred.

The question was decided in Schleicher v. Gatlin, 85 Texas, 272, which decision is as consistent with the proposition on which we rest our present decision as with the broader one, which it · is sometimes thought to have laid down, to the effect that a possession must be adverse to the world to be good against anyone. In his opinion in that case Judge Garrett says: "His holding was not adverse until 1879, for he believed until then that the land belonged to the State. The holding must be against the claim of all other persons to be adverse." There was no evidence that there was any especial denial or repudiation of the claim of the true owner in that case, and it was true that, to make a possession so held in recognition of the right of the State hostile to such owner, it must have been such as was hostile to every other person but the State so as to include him. This is at least an admissible interpretation of the concise language employed, and in Judge Garrett's subsequent opinion in Cartwright v. Pipes, 9 Texas Civ. App., 309, he asserts that Schleicher v. Gatlin was correctly decided on its facts, but affirms the further proposition that a possession is sufficient to defeat the true owner if it has been held adversely to him, although in recognition of the title of the State. Schleicher v. Gatlin has never been overruled by this court and, thus explained, is in harmony with the views now expressed.

The refusal of writs of error in such cases has meant no more than that this court regarded the question, whether or not the possession involved was adverse and hostile to the title asserted by the plaintiff, as one of fact, where there were circumstances from which that quality could be inferred, and therefore felt bound by the findings of the courts below on that question, not regarding the belief under which the possession was taken, that the land belonged to the State, as necessarily decisive of the whole question. Having endeavored to show that we believe to be the true view of the subject, we shall not undertake a review of the cases so acted upon.

In this case, as before indicated, we think the Court of Civil Appeals properly held the evidence insufficient to justify a finding of adverse possession.

*Affirmed.*